The State of Ohio, Appellee, *v.* Blair, Appellant.

[Cite as State v. Blair (1972), 32 Ohio St. 2d 237.]

(No. 72-145—Decided December 15, 1972.)

*Mr. George C. Smith*, prosecuting attorney, and *Mr. C. William Brownfield, Jr.*, for appellee.

*Messrs. Brownfield, Kosydar, Bowen, Bally & Sturtz* and *Mr. Laurence E. Sturtz*, for appellant.

*Per Curiam.* This case involves a prosecution under R. C. 2905.34 for the sale and possession for sale of obscene

magazines. We affirm the judgment of conviction.

Appellant raises nine propositions of law, to which we address ourselves.

## I.

Appellant contends that the trial court erred in not admitting testimony by defense counsel to the effect that appellant requested his opinion as to whether the subject material was legally obscene prior to putting it up for sale. Appellant does not contend that such testimony would be controlling on the issue of "guilty knowledge" on the part of appellant, but urges that it is relevant.

R. C. 2905.34 provides: "No person shall knowingly sell * * * or offer to sell * * * an obscene * * * magazine * * *." *Scienter* is an essential element of the state's case and must be proved beyond a reasonable doubt (*Smith* v. *California* [1959], 361 U. S. 147; *State* v. *Jacobellis* [1962], 173 Ohio St. 22), and it is competent for appellant to show want of such knowledge.

Appellant relies on *Crabtree* v. *State* (1876), 30 Ohio St. 382, wherein this court held that it was error to exclude evidence which showed that the accused, before making a sale of liquor, had inquired of persons acquainted with the purchaser in an attempt to ascertain if the purchaser was a person in the habit of getting intoxicated.

*Crabtree* is more akin to a prosecution for the sale of obscene material to a minor, where a vendor made a good-faith prior effort to establish the age of the purchaser. However, in this case it is the status of the material being offered for sale, not the status of the purchaser, that is in question.

Acknowledging the difficulty in ascertaining whether particular material is or is not obscene, we fail to see the relevancy of testimony indicating that the appellant made inquiries for the opinion of a person as to whether the material was obscene, when such person could not provide him with a pertinent answer. Such an individual opinion would not represent a national[3] contemporary community

---

[3]*Jacobellis* v. *Ohio* (1963), 378 U. S. 184, 192.

standard. Having wilfully engaged in the business of selling magazines with knowledge of their contents, a bookseller voluntarily runs the risk of having such declared legally obscene. This risk cannot be lessened by making inquiries of an attorney anymore than it could be lessened by making inquiries of customers. We find no error in the exclusion of such testimony.

## II.

Appellant's second proposition of law is that the state failed to establish the degree of proof necessary for a finding that the materials in question were, in fact, obscene.

The basic test of obscenity in use today is that: " '(a) the dominant theme of material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value,' emphasizing that the 'three elements must coalesce,' and that no such material can 'be proscribed unless it is found to be *utterly* without redeeming social value.' " *Redrup* v. *New York* (1967), 386 U. S. 767, 770; *State* v. *Mazes* (1966), 7 Ohio St. 2d 136.

The state introduced two expert witnesses in this case. Dr. Ralph Patterson offered testimony that the material in question met all three elements of the test, and Ernest Cady testified similarly as to the elements (b) and (c). Appellant introduced two expert witnesses, both of whom testified at some length as to an absence of the elements of obscenity. Faced with these conflicting views, the jury was properly left with the decision of weighing the evidence. We will not disturb its conclusion with regard thereto. See the concurring opinion of Herbert, J., in *State* v. *Jackson* (1972), 32 Ohio St. 2d 203, and cases cited therein.

## III.

Appellant's third contention pertains to the trial court's refusal to admit in evidence 12 magazines and one book afforded *Redrup* treatment by the United States Supreme Court in *Bloss* v. *Dykema* (1969), 398 U. S. 278. Appellant contends that the proffered exhibits are relevant in

that (1) they exhibit evidence of contemporary community standards; (2) they aid the jury in assessing the credibility of the state's witness, Dr. Patterson (Dr. Patterson testified that these magazines failed to meet the *Redrup* standard); and (3) they assist the jury in understanding the charge as to what is or is not obscene.

Appellant's proffered exhibits are not the *same* magazines as those in question here. Therefore, they are not specifically relevant as to the character of the magazines in this case. At best, they could serve only as examples of material, found to be obscene by a jury in a state court, and subsequently held not to be obscene by the United States Supreme Court. The determination in *Bloss* does not elucidate the guidelines laid down in *Redrup*, nor does an examination of such magazines aid in the determination of what is or is not to be deemed obscene.

Justice Harlan, dissenting in *Bloss*, at page 278, emphasized the fine and poorly defined line between those materials which the Supreme Court deemed to qualify for *Redrup* treatment and those it deemed did not qualify, and we fail to see how the jury's difficult task, absent specific guidelines, would be eased by exposing it to these proffered exhibits.

Appellant argues that the value of such magazines is that they broaden the horizon of the individual jurors, enabling them to better understand the national contemporary community standard. Justice Frankfurter, concurring in *Smith* v. *California, supra* (361 U. S. 147), at pages 165 and 166, addressed himself to this issue, stating:

"* * * the determination of obscenity is for juror or judge not on the basis of his personal upbringing or restricted reflection or particular experience of life, but on the basis of 'contemporary community standards.'" However, he continued: "Can it be doubted that there is a great difference in what is to be deemed obscene in 1959 compared with what was deemed obscene in 1859? The difference derives from a shift in community feeling regarding what is to be deemed prurient or not prurient by reason

of the effects attributable to this or that particular writing.''

We decline to add to the existing confusion concerning obscenity law by declaring that material, judicially held not to be obscene three years ago, is, today, relevant, in defining the national contemporary community standard.

We also fail to find reversible error in regard to the value of these proffered exhibits in aiding the jury to assess the credibility of the state's expert witness, Dr. Patterson. His testimony represented his opinion on the issue of obscenity, as to the magazines shown him, and it was not binding on the jury. His opinion, as well as the finding of the jurors themselves in holding this material to be obscene, aids courts in determining what the national contemporary standard is. Nor is the weight of his opinion lessened by the fact that certain magazines, which he today feels would not meet the national contemporary standard, had previously been found to have met the then existing standard. Appellant's expert witnesses also gave their opinions as to today's standards.

## IV.

The fourth and fifth infirmities urged by appellant concern the charge made to the jury regarding ''redeeming social value'' and ''prurient interest.''

After correctly stating the three elements which must coalesce before a magazine can be held to be obscene, the trial court stated:

''Social value resulting from the fact a magazine is obscene and its use as obscenity does not constitute redeeming social value. Redeeming social value is social value existing for some use or purpose *other* than obscenity and despite the fact the magazine is obscene.'' (Emphasis added.)

Appellant contends that this instruction eliminates the redeeming social value element, and that the court should have elucidated on what some other *use or purpose* might have been.

The record is replete with testimony regarding various

aspects of social value which material of this sort might have, and we do not feel that appellant was prejudiced by not having such uses and purposes reiterated in the charge. We are not confronted with a situation in which the magazines were found to have a *modicum* of social value (see *Memoirs* v. *Attorney General* [1966], 383 U. S. 413), nor was the charge such as to "read out" the requirement that each magazine must be *utterly* without social redeeming value before it could be held to be obscene. Here, the jury was instructed as to what use or purpose would not satisfy the redeeming social value test, leaving it with the correct impression that any other use or purpose could be redeeming.

The trial court's instruction regarding prurient interest was:

"Material appeals to a prurient interest in sex when it has a tendency to excite lustful thoughts, or appeals to a shameful or morbid interest in nudity or sex. Appeal to prurient interest in sex is not limited to material which causes lustful acts rather than thoughts or which causes action reprehensible to society."

The court continued:

"An appeal to voyeurism constitutes an appeal to a prurient interest in sex. Voyeurism constitutes a tendency or tendencies of a particular person whose sexual desire is concentrated upon seeing sex organs and sex acts."

The only authority we have found for the inclusion of voyeurism in an instruction regarding prurient interest comes from *State, ex rel. Sensenbrenner,* v. *Adult Book Store* (1971), 26 Ohio App. 2d 183. We do not, however, find its inclusion in the jury charge to be in conflict with the definition of prurient interest provided by the United States Supreme Court.

In *Roth* v. *United States* (1957), 354 U. S. 476, the Supreme Court upheld the argument that the inciting of *thoughts* alone, without overt antisocial conduct, was satisfactory to uphold a conviction. A magazine which appeals to voyeurism does have a tendency to excite lustful

thoughts, and thus, inclusion of voyeurism in the instruction provided the jurors with an example of an appeal to a prurient interest that is particularly relevant to the character of the magazines in question.

We find no prejudicial error in either challenged instruction provided the jury.

## V.

Appellant's propositions of law numbers six and nine essentially involve the constitutionality of R. C. 2905.34. Appellant contends (1) that the statute fails to apprise a person with sufficient clarity to enable him to govern his conduct within the limits of the law, and (2) that the language of R. C. 2905.34 is such that it would permit an indictment for the sale or possession of a "magazine not wholly obscence but containing lewd or lascivious * * * photographs * * *."

The first element of the tripartite standard enunciated in *Redrup* provides that the dominant theme of the material (magazine), taken as a whole, must appeal to a prurient interest in sex. This is not to say that each and every page must appeal to a prurient interest in sex, but that the magazine, *taken as a whole*, must have such an appeal. Therefore, it is possible that a magazine, not wholly obscene, when taken as a whole, may be obscene. The indictments herein follow the language of R. C. 2905.34, and we hold that such indictments are constitutionally sufficient.

We hold further that R. C. 2905.34, as then in effect, is not unconstitutionally vague, and does not deprive appellant of due process of law. It is indisputable that the determination of which materials are obscene, and which are not, cannot be precisely made. However, efforts to rectify this problem by the adoption of new sections of the Revised Code do not indicate that the former statute was too vague. As stated in *Roth*, at page 491: "This court * * * has consistently held that lack of precision is not itself offensive to the requirements of due process." Likewise, evidence of the adoption of a more precise statute by the General Assembly does not imply that the previous language failed

to meet constitutional muster; its presumed constitutionality survives.

This court has upheld this statute on prior occasions, and these issues have been suggested to the Supreme Court of the United States. See *State* v. *Jacobellis, supra* (173 Ohio St. 22), reversed in 378 U. S. 184 (1964), on other grounds than the wording of the statute; *State* v. *Mazes, supra* (7 Ohio St. 2d 136), reversed in 388 U. S. 453 (1967), on other grounds than the wording of the statute. There has been no reversal by reason of claimed statutory invalidity or defective indictment, and we see no reason to hold to the contrary herein.

## VI.

Appellant's final contentions are (1) that magazines seized by police officers without a search warrant and without a prior judicial adversary hearing on the issue of obscenity are not admissible in evidence, and (2) that no prosecution may arise under R. C. 2905.34 dealing with the *sale* of allegedly obscene material unless, prior to the filing of the affidavit or the returning of the indictment, a prior judicial adversary hearing had been held on the issue of probable cause to believe the materials were obscene. The first of these contentions pertains to the fourth, fifth and sixth counts while the latter pertains to the second count.

We addressed ourselves to a similar issue in *State* v. *Albini* (1972), 31 Ohio St. 2d 27, the syllabus of which states:

"Where, incident to a lawful arrest upon a charge of exhibiting an obscene motion picture film, a *single* copy of the film is seized as *evidence* to be used in support of the charge, the fact that, prior to its seizure, no adversary hearing had been held upon the question of the obscenity of the film does not require reversal of a conviction for its unlawful exhibition." (Emphasis added.)

We see no reason to extend our discussion on that issue, nor are we compelled to distinguish the holding in *Albini* because it pertained to motion picture film rather

than magazines. The principles are the same, and no greater burden is imposed upon freedom of expression.

For the reasons set forth herein, we find no prejudicial error. Therefore, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN and LEACH, JJ., concur.

BROWN, J., dissents.