THE STATE OF OHIO, APPELLEE, *v.* VALCHAR, APPELLANT.

22

(No. 30796—Decided February 15, 1973.)

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Herman Marolt,* for appellee.

*Messrs. Sindell, Sindell, Bourne, Markus, Stern & Spero* and *Mr. Reuben M. Payne,* for appellant.

KRENZLER, J. Defendant appellant, hereinafter referred to as "defendant," was indicted by the Cuyahoga County Grand Jury in its September, 1968 term for possession and possession for sale of an obscene motion picture in violation of R. C. 2905.34 (amended effective September 15, 1970, as R. C. 2905.35).

Defendant requested a bill of particulars which was furnished by the Prosecuting Attorney.

Defendant filed a motion to suppress evidence of all items taken from her apartment. The trial court denied said motion to suppress.

The case was tried to a jury, which found defendant guilty of both counts of the indictment.

Defendant's motion for a new trial was overruled and she has taken her appeal to this court.

The substance of the pertinent events introduced as evidence in the trial is that the defendant was the custodian in the apartment in which she lived on Lake Avenue in the City of Lakewood, Ohio. One Earl Haberstroh, who was a tenant in the same building, visited her apartment in May of 1968 before Memorial Day, and observed two movie projectors and a bag containing approximately 25 reels of film.

The defendant showed Earl Haberstroh and a friend of his approximately 25 reels of film, and they stayed in the apartment for approximately two and one-half hours. At the conclusion of the showings she asked him if he knew anyone who wanted to buy the films or rent them. Earl Haberstroh did not purchase any films at that time and left the defendant's apartment.

Earl Haberstroh called the defendant on July 23, 1968, and asked her if she had stag films for sale, and when he was advised she did, he returned to defendant's apartment with a marked twenty dollar bill he received from the Lakewood Police Department for the purpose of purchasing one of the films.

He did purchase the film from defendant entitled "Beauty and the Boxer." He returned to the Lakewood Police Department and gave the roll of film and $5 change to Detective Delmar Wilburn, and together they viewed the film which Mr. Haberstroh had purchased.

Following the viewing of the film Detective Wilburn obtained an arrest and search warrant for the defendant, returned to her apartment and arrested her.

At the trial of the defendant Earl Haberstroh and Detective Wilburn testified for the state as to the foregoing events. In addition, the state presented as a witness Peter Bellamy, a movie critic for the Cleveland Plain Dealer, who testified that "Beauty and the Boxer" was obscene.

The movie "Beauty and the Boxer" was shown to the

jury and introduced into evidence. This movie was also viewed by this court.

Defendant appellant has five assignments of error, which in substance are as follows:

1. As a matter of law, there was insufficient evidence of obscenity based on national community standards.

2. The defendant was denied due process of law in that the trial judge involved himself in the prosecutorial function. But for the intervention of the trial judge, the prosecution would have failed to prove each and every element of the crime charged.

3. By failing to give a limiting instruction to the jury as to the weight and purpose to be accorded evidence of "similar acts" the trial court committed patent reversible error.

4. Error of the trial court in admitting evidence, where a trustworthy chain had not been established for its admission.

5. Error of the trial court in failing to grant the motions to suppress the arrest warrant and the search warrant.

Assignment of error one is not well taken because there was sufficient evidence of obscenity for the jury to return a verdict of guilty. Both the jury and this court viewed the film entitled "Beauty and the Boxer," in which the actors are an adult female and a canine boxer, and not a male prize fighter. The plot of the movie consists of the adult female sexually stimulating the dog and then engaging in sexual intercourse and other sex acts with the dog.

The law on obscenity is well established in this country. Material is obscene if to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to a prurient interest in sex, if it is utterly without redeeming social importance and if it is patently offensive because it goes substantially beyond customary limits of candor in description or representation of sexual matters. *"John Clelland's Memoirs of a Woman of Pleasure"* v. *Attorney General of Massachusetts* (1966), 383 U. S. 413; *Jacobellis* v. *Ohio*

(1964), 378 U. S. 184; *Roth* v. *United States* (1957), 354 U. S. 476; *State* v. *Blair* (1972), 32 Ohio St. 2d 237; *State* v. *Mazes* (1966), 7 Ohio St. 2d 136; *State, ex rel. Sensenbrenner,* v. *Adult Book Store* (1971), 26 Ohio App. 2d 183; *Youngstown* v. *DeLoreto* (1969), 19 Ohio App. 2d 267.

In the usual obscenity trial expert testimony is necessary in order to introduce evidence that the three elements required in *Roth* and *Jacobellis* are present. There is an exception, however, with respect to material that is hard core pornography. No proof other than the viewing of it is required to determine if it is in fact obscene. No expert testimony is needed to enable the trier of the facts to conclude that it meets the three-fold constitutional test of obscenity established by the United States Supreme Court. *Mitchum* v. *State* (Fla. App. 1971), 251 So. 2d 298; *Kaplan* v. *United States* (D. C. Ct. App. 1971), 277 A. 2d 477; *United States* v. *Wild* (2nd Cir. 1970), 422 F. 2d 34; *Lancaster* v. *State* (1969), 7 Md. App. 602, 256 A. 2d 716; *State* v. *Childs* (1968), 252 Ore. 91, 447 P. 2d 304.

Simply stated, hard core pornography such as this can and does speak for itself. We hold as a matter of law that the film in this case is hard core pornography and obscene, lewd and indecent, and that its dominant theme appeals to a prurient interest in sex, in that the main purpose is to attract the attention of those who are perverted or are morbidly or abnormally curious about sex, and that this film has no redeeming social value and is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters.

Further, in the present case the trial court's charge to the jury correctly stated the law applicable to obscenity under the facts in this case and there was sufficient evidence upon which the jury could find the defendant guilty beyond a reasonable doubt.

Assignment of error two is not well taken. The procedure used by the trial court in consulting with the prosecutor and defense counsel regarding the questions asked of the state's witness Bellamy is not approved. However,

it was out of the hearing of the jury and did not tend to suggest to the jury that the court favored either side and did not impair the defendant's right to a fair trial. The court's action is not considered prejudicial.

The third assignment of error is not well taken. The evidence introduced concerning the viewing of the films by Earl Haberstroh prior to the arrest of the defendant is not considered evidence of a similar act, but is evidence of a continuing course of conduct between the parties, and is part of the same transaction for which defendant was tried. It therefore does not require a charge to the jury under R. C. 2945.59, the similar acts statute.

The fourth assignment of error is not well taken. All of the evidence concerning the elements of the crimes of possession and possession for sale of obscene movies was relevant and competent, and the trial court did not err in admitting such evidence.

The fifth assignment of error concerning the trial court's failure to grant motions to suppress the arrest warrant and the search warrant is not well taken.

The state's witness, Earl Haberstroh, told the police he had seen the movies at the defendant's residence. The police gave him marked money to use in purchasing the film. The witness returned to the police with the movies. Based on this evidence a search warrant and arrest warrant were issued. A careful review of the record clearly establishes that there was probable cause to issue these warrants, and the trial court did not err in failing to grant the motion to suppress the arrest warrant and the search warrant. :

*Judgment affirmed.*

MANOS, C. J., WASSERMAN, J., concur.