DECISION
{¶ 1} Relator, A L Painting, LLC, has filed an original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate an order granting respondent-claimant, Theodore Krystalis ("claimant"), an additional award for violation of a specific safety requirement ("VSSR"), *Page 2 
and to deny claimant's application for VSSR. Relator also requests a writ ordering the commission to vacate its decision denying relator's motion for a rehearing, and to issue an order approving a rehearing of the claimant's VSSR application.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court issue a writ of mandamus ordering the commission to vacate that portion of its order finding violations of Ohio Adm. Code 4123:1-3-03(A)(3), (B)(6), and (F)(1), and to conduct further proceedings as to those provisions. (Attached as Appendix A.) The magistrate further determined that relator had not demonstrated the commission abused its discretion in finding that relator violated Ohio Adm. Code 4123:1-3-03(C)(1).
 {¶ 3} Relator has filed objections to the magistrate's decision, and the commission and claimant have also filed objections to the magistrate's decision. In its objections, relator challenges the magistrate's finding that the commission did not abuse its discretion in finding a violation of Ohio Adm. Code 4123:1-3-03(C)(1). Relator contends there was "overwhelming evidence" that its employees were provided adequate respiratory protection, and that claimant's chronic symptoms from chemical exposure were not proximately caused by a VSSR. Relator further contends, as it did in arguments before the magistrate, that the commission abused its discretion in denying relator's request for a rehearing.
 {¶ 4} Upon review, we find that the magistrate properly determined the commission did not abuse its discretion in finding a violation of Ohio Adm. Code 4123:1-3-03(C)(1), which requires that "[p]ersonal protective equipment furnished by the employer shall be issued to the employee in sanitary and proper condition so that it will effectively *Page 3 
protect against the hazard involved." As noted by the magistrate, Larry Deese, an investigator with the Ohio Bureau of Workers' Compensation ("BWC"), found that the respirator issued to claimant was inadequate in regards to the permissible exposure level. The magistrate further cited a report that there was exposure at or above the permissible exposure level for lead "which was in excess of ten times the acceptable limit." In addition, investigators for the Occupational Safety and Health Administration found that the employer failed to perform "either a quantitative or qualitative face fit test at the time of initial fitting," and that timely follow-up tests were not provided to relator's employees.
 {¶ 5} The Staff Hearing Officer ("SHO"), in finding a violation of the administrative rule at issue, cited testimony by claimant that the employer did not provide professional fit testing "to ensure that the respirators fit properly and were sufficient to guard against exposure to hazardous levels of airborne [contaminants], particularly lead and arsenic." The SHO also cited medical evidence indicating that claimant had high levels of arsenic and lead in his blood. Finally, we note that relator did not participate in the VSSR investigation, nor did relator attend the VSSR hearing or submit evidence. Upon review, there was some evidence to support the SHO's finding that relator violated Ohio Adm. Code 4123:1-3-03(C)(1).
 {¶ 6} Relator's contention that the commission abused its discretion in failing to grant a rehearing is without merit. The SHO issued its decision granting the additional award to claimant on December 15, 2005, and approximately six months later the employer-relator filed a motion with the commission for a rehearing, alleging it had newly discovered evidence that was unavailable at the time of the original hearing. The alleged newly discovered evidence was the testimony of Kostas Grillis, who had been deposed in connection with a collateral intentional tort lawsuit. Pursuant to Ohio Adm. Code 4121-3-20(E), *Page 4 
a party has a right to file a motion for rehearing within 30 days of receiving the decision it seeks to be reconsidered. After 30 days has passed, a motion for rehearing will only be granted if it is supported by "new and additional proof not previously considered and which by due diligence could not be obtained" in the original proceeding, or if the decision "was based on an obvious mistake of fact or clear mistake of law." Ohio Adm. Code 4121-3-20(E)(1)(a) and (b). The commission found that Grillis' testimony was not new evidence, that the employer knew Grillis was a potential witness whose affidavit could have been submitted during the prior proceeding, and that the SHO's decision was not based on an obvious mistake of law or fact. We agree and adopt the magistrate's reasoning regarding this issue.
 {¶ 7} Based upon the foregoing, relator's objections are not well-taken and are overruled.
 {¶ 8} Claimant has filed objections, arguing that the magistrate erred in making findings as to Ohio Adm. Code 4123:1-3-03(F)(1), and as to 4123:1-3-03(A)(3) and (B)(6). Upon review, we disagree with the magistrate's conclusion that the commission abused its discretion in finding a violation of Ohio Adm. Code 4123:1-3-03(F)(1). The investigation showed the respiratory equipment that was provided was inadequate to withstand the level of contaminants to which claimant was being exposed. Therefore, the mask, even if properly fitted, could not protect claimant from the contaminants within the workspace confined by tarps. The commission may draw reasonable inferences when determining whether there has been a violation of a specific safety requirement.Supreme Bumpers, Inc. v. Indus. Comm., 98 Ohio St.3d 134,2002-Ohio-7089. Here, because there was some evidence to support a violation of Ohio Adm. Code 4123:1-3-03(F)(1), we do not *Page 5 
adopt the magistrate's conclusions but, instead, we find the conclusion of the SHO regarding this issue to be proper.
 {¶ 9} Regarding the remaining purported violations, we do not adopt the magistrate's determination that the provisions of Ohio Adm. Code4123:1-3-03(A)(3) and (B)(6) could constitute specific safety requirements. While those provisions are relevant in determining a violation, they are descriptive in nature and do not impose safety requirements. On this basis, we do not adopt the magistrate's conclusion, and we find there were no violations under Ohio Adm. Code4123:1-3-03(A)(3) and (B)(6). Thus, we conclude the commission abused its discretion in finding violations under those two provisions.
 {¶ 10} Accordingly, claimant's objections are sustained to the extent the magistrate erred in finding the commission failed to make sufficient factual findings to support a violation of Ohio Adm. Code4123:1-3-03(F)(1). In light of our disposition of the objections of relator and claimant, the objections of the commission are rendered moot.
 {¶ 11} Based upon our independent review of the record, we adopt the magistrate's findings of fact, but we modify the conclusions of law to the extent provided in this decision; relator's objections are overruled, claimant's objections are sustained to the extent provided, the commission's objections are rendered moot, and a limited writ is granted remanding this matter to the commission for a new penalty determination based upon a finding of violations under Ohio Adm. Code4123:1-3-03(C)(1) and (F)(1).
Objections sustained in part and overruled in part; limited writ ofmandamus granted.
 TYACK and BOWMAN, JJ., concur. *Page 6 
BOWMAN, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 7 
 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS {¶ 12} Relator, A L Painting, LLC, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which found violations of specific safety requirements *Page 8 
("VSSR") against relator for violating Ohio Adm. Code 4123:1-3-03(A)(3), (B)(6), (C)(1), and (F)(1), and ordering the commission to vacate its VSSR finding against relator.
Findings of Fact: {¶ 13} 1. Respondent Theodore Krystalis ("claimant") was employed by relator as a bridge painter.
 {¶ 14} 2. During his employment, claimant was exposed to high toxic levels of both lead and arsenic. (See Stipulation of Evidence at pages 104-107.)
 {¶ 15} 3. As a result, claimant filed a workers' compensation claim which has been allowed for the following conditions: "toxic effects of arsenic and lead; depressive disorder; chronic mild proteinuria; tinnitus; peripheral neuropathy, anemia and bone marrow depression."
 {¶ 16} 4. After his claim was allowed, claimant filed an application for a VSSR alleging that relator failed to provide personal respiratory protection and engineering protective measures sufficient to guard against the hazard of exposure to airborne contaminants in the workplace.
 {¶ 17} 5. The Ohio Bureau of Workers' Compensation ("BWC") assigned Larry Deese to investigate claimant's allegations. It is undisputed that relator and relator's counsel did not cooperate with the investigation. Specifically, as Deese noted, "the above referenced VSSR matter has not been conducted in the usual/customary (SVIU) manner by this investigator." Specifically, relator failed to respond to Deese's request for a considerable amount of information and access to supervisors. As such, the majority of evidence available to Deese had been provided by claimant. *Page 9 
 {¶ 18} 6. Deese specifically found that "[t]he respirator * * * (PPE) issued/-provided, according to Theodore Krystalis, was inadequate in regards to the Permissible Exposure Level" ("PEL"). In making that finding, Deese referred to exhibit four which specifically identified the half facepiece respirator which had been provided to claimant. According to the catalog, the respirator issued to claimant, when properly fitted, could be used where "exposure to lead, * * * arsenic, and MDA for concentrations up to 10 times the Permissible Exposure Limit" and was not to be used in environments that are immediately dangerous to life or health. Also contained within the stipulation of evidence are sampling data summaries related to the I-71 bridge near Cincinnati, Ohio, project from Fall 1996. Those records document the following concentrations of lead. Specifically, in September 1999, the exposure to lead was measured as high as "17,000 µ g/m³ " when the PEL for lead exposure is "50 µ g/m ³ ." Clearly, exposure at the level 17,000 is in excess of ten times the PEL of 50. The record also contains a report prepared by Jim Hrusovski of "Safety Controls Technology" in July 2002, related to relator's "Carnegie Bridge Project." The results of this analysis indicated that there was exposure at or above the PEL for lead which was in excess of ten times the acceptable limit. The record also contains documentation from the Occupational Safety and Health Administration ("OSHA") investigation which followed. OSHA investigators found the following violation:
 * * * The employer did not perform either a quantitative or qualitative face fit test at the time of initial fitting and at least every 6 months thereafter for each employee wearing a negative pressure respirator:
 (a) Timely follow-up respirator fit tests were not provided to the following employees: 2 Bridge Painters, 2 Vacuumers, 1 Foreman, 1 Rigger 
Ground Man and 1 Equipment Mover. *Page 10 
 {¶ 19} 7. A hearing was held before a staff hearing officer ("SHO") on December 15, 2005. Claimant alleged violations of code provisions alleging both that relator failed to construct sufficient engineered protective measures to prevent hazardous exposure to airborne contaminants, as well as failure to issue adequate personal protective equipment to provide necessary respiratory protection. The SHO determined that claimant did not meet his burden of proving that relator violated the provisions which pertain to the construction of sufficient engineered protective measures to prevent hazardous exposure to airborne contaminants. However, the SHO did find that relator failed to provide adequate personal protective equipment to provide the necessary respiratory protection. In that respect, the SHO provided:
 * * * The Staff Hearing Officer finds that the employer violated Administrative Code 4123:1-3-03 (A)(3); 4123:1-3-03 (B)(6); 4123:1-3-03 (C)(1); and 4123:1-3-03 (F)(1). These code sections require that the employer provide personal protective equipment that is sufficient to guard against exposure to hazardous airborne containments [sic]. Code sections further require that the equipment furnish[ed] by the employer be issued to the employee in sanitary and proper condition so that it will effectively protect against the hazard involved. These code sections further provide that the employee shall use the provided equipment properly, should protect it against damage and should report any damage to the employer.
 The employer did not appear at the hearing. The Injured Worker appeared at the hearing and testified that the employer did provide respiratory protection for the Injured Worker. The Injured Worker testified that there was no professional fit testing to ensure that the respirators fit properly and were sufficient to guard against exposure to hazardous levels of airborne containments [sic], particularly lead and arsenic. The Staff Hearing Officer find[s] that the Injured Worker was exposed to lead based paint in the work place. The Staff Hearing Officer further finds, based upon medical testing on file that the Injured Worker has high levels *Page 11 
of arsenic and lead in his blood and this claim is allowed for the TOXIC EFFECTS OF ARSENIC AND LEAD. The Staff Hearing Officer therefore finds that the employer failed in its duty to provide personal protective equipment to the Injured Worker which was sufficient to guard against hazardous exposures to arsenic and lead in the work place. The Staff Hearing Officer further finds that if the employer had provided the Injured Worker with safety equipment sufficient to guard against the hazard of dangerous airborne containments [sic], the Injured Worker would not have contracted the occupational disease that is recognized in this claim. The Staff Hearing Officer therefore finds that it is the failure of the employer to provide adequate personal protective equipment that is the proximate cause of the occupational disease recognized in this claim.
 It is therefore the order of the Staff Hearing Officer that an Additional Award of compensation be granted to the Injured Worker in the amount of 35% of the maximum weekly rate.
(Emphasis sic.)
 {¶ 20} 8. Following the SHO's decision on the VSSR, relator filed a motion for rehearing arguing that it had additional evidence to prove that claimant was provided, fit tested, and trained in the use of personal protective equipment and arguing that the VSSR award was based on an erroneous factual record. Relator also argued that there was evidence that claimant's blood levels were normal and unremarkable in 2002.
 {¶ 21} 9. In an order mailed November 8, 2006, relator's request for rehearing was denied as follows:
 It is hereby ordered that the motion for rehearing filed 05/31/2006 be denied. The Employer has not submitted any new and relevant evidence nor shown that the order of 12/15/2005 was based on an obvious mistake of fact or on a clear mistake of law.
 Specifically, counsel for the employer alleges that there is "new evidence" in the form of the deposition testimony of Kostas Grillis, and in the form of a certificate purportedly *Page 12 
showing that the injured worker had participated in a "Lead-Based Paint Abatement Course" on or about March 23, 2002. However, it is found that the employer has not met the requirements specified in O.A.C. 4121-3-20(C)(1)(a). Mr. Grillis has long been known to have been a witness, and the employer could have taken an affidavit from him or subpoenaed him to be at the VSSR hearing. Likewise, the 03/23/2002 certificate was clearly in existence prior to the 12/15/2005 VSSR hearing herein. It is also noteworthy that neither the employer nor counsel attended the VSSR hearing.
 Further, a "clear mistake of fact" has not been shown, in regard to the injured worker's blood tests for lead. This claim has in fact been allowed, in part, for "Toxic effects of arsenic and lead," and this is just a re-argument of proof on file.
 As it is found that the requirements of O.A.C. 4121-3-20(C)(1)(a) or (b) have not been met, the request for a VSSR rehearing must be denied.
 {¶ 22} 10. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 23} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be *Page 13 
given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 24} In regard to an application for an additional award for a VSSR, the claimant must establish that an applicable and specific safety requirement exists, which was in effect at the time of the injury, that the employer (relator herein) failed to comply with the requirement, and the failure to comply was the cause of the injury in question. State exrel. Trydle v. Indus. Comm. (1972), 32 Ohio St.2d 257. The interpretation of a specific safety requirement is within the final jurisdiction of the commission. State ex rel. Berry v. Indus. Comm.
(1983), 4 Ohio St.3d 193. Because a VSSR award is a penalty, however, it must be strictly construed, and all reasonable doubts concerning the interpretation of the safety standard are to be construed against its applicability to the employer. State ex rel. Burton v. Indus. Comm.
(1989), 46 Ohio St.3d 170. The question of whether an injury was caused by an employer's failure to satisfy a specific safety requirement is a question of fact to be decided by the commission subject only to the abuse of discretion tests. Trydle; State ex rel. A-F Industries v.Indus. Comm. (1986), 26 Ohio St.3d 136; and State ex rel. Ish v. Indus.Comm. (1985), 19 Ohio St.3d 28.
 {¶ 25} In this mandamus action, relator argues that the commission abused its discretion in finding that claimant had submitted some evidence to establish the violations found to exist by the commission. Relator also contends that the commission abused its discretion by denying relator's motion for rehearing. Claimant and the commission both argue that there is some evidence in the record to support the commission's findings, that relator should not be permitted to maintain this mandamus action because relator both failed to cooperate with the BWC in its investigation and failed to participate in the VSSR *Page 14 
process until after the commission issued a decision in claimant's favor, and the commission did not abuse its discretion in denying relator's motion for rehearing because relator was not tendering evidence which it could not have presented at the hearing before the SHO.
 {¶ 26} Addressing first relator's argument that the commission abused its discretion by denying relator's motion for rehearing, it is this magistrate's conclusion that relator is not entitled to a writ of mandamus in this regard.
 {¶ 27} Ohio Adm. Code 4121-3-20(E) pertains to the filing of motions for rehearing in VSSR cases and provides:
 Within thirty days of the receipt of the order of the staff hearing officer deciding the issues presented by the application, either party has the right to file a motion requesting a rehearing. * * *
 (1) If the motion for rehearing is filed, a staff hearing officer, after the expiration of the answer time, shall review the motion for rehearing under the following criteria:
 (a) In order to justify a rehearing of the staff hearing officer's order, the motion shall be accompanied by new and additional proof not previously considered and which by due diligence could not be obtained prior to the prehearing conference, or prior to the merit hearing if a record hearing was held and relevant to the specific safety requirement violation.
 (b) A rehearing may also be indicated in exceptional cases where the order was based on an obvious mistake of fact or clear mistake of law.
 (2) If the motion for rehearing does not meet the criteria as outlined in paragraph (E)(1)(a) or (E)(1)(b) of this rule, the motion shall be denied without further hearing.
 {¶ 28} In the present case, relator wanted to submit the deposition testimony of Kostas Grillis. However, the commission determined that relator could have presented *Page 15 
the evidence contained within Mr. Grillis's deposition by affidavit or could have subpoenaed him for the VSSR hearing. The commission determined that relator was aware of Mr. Grillis as a potential witness, that his testimony was not new and that, with due diligence, relator could have presented that evidence. Further, the commission determined that relator had not demonstrated a clear mistake of fact by intending to submit the results of claimant's blood tests for lead. The commission found that relator's claim was allowed, in part, for toxic effects of arsenic and lead and that relator was simply rearguing facts that were already in evidence. Lastly, in this regard, the fact that relator chose not to participate in the VSSR hearing is important. By choosing not to participate in the VSSR hearing, relator chose not to present evidence that would have contradicted the evidence that claimant submitted. The magistrate finds that the commission did not abuse its discretion in finding that relator's evidence regarding the result of blood tests did not constitute an exceptional case where the order was based on an obvious mistake of fact. Relator has not shown that the commission abused its discretion when it denied relator's motion for rehearing. As such, this argument of relator is not well-taken.
 {¶ 29} In this mandamus action, both the commission and claimant argue that relator should not be permitted to make any arguments because relator failed to both cooperate with the VSSR investigation and participate in the VSSR hearing. The commission argues that the case ofState ex rel. Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78, should apply and that this court should not consider any error which relator could have called but did not call to the commission's attention at a time when such error could have been avoided or corrected. *Page 16 
 {¶ 30} While the commission and claimant are correct that this court does not have to consider any errors which relator could have called but did not call to the commission's attention at the VSSR hearing, relator can still argue that the commission abused its discretion by issuing an order which was not supported by some evidence. As such, this court can review the record and determine whether claimant met his burden of proof on the VSSR issue and whether the commission's order is supported by some evidence. As will be explained hereinafter, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in finding a violation of Ohio Adm. Code4123:1-3-03(C)(1); however, the magistrate also finds that the commission did abuse its discretion by finding violations of Ohio Adm. Code 4123:1-3-03(A)(3), (B)(6) and (F)(1).
 {¶ 31} As noted previously, the real issue in this case is whether the commission abused its discretion in finding that claimant met his burden of proof. The commission specifically found violations of the following four provisions:
 [1.] 4123:1-3-03 Personal protective equipment
 (A) Scope.
 The requirements of this rule relate to the personal protective equipment listed immediately below, as required for employees on operations described in this rule in which there is a known hazard, recognized as injurious to the health or safety of the employee.
 * * *
 (3) Respiratory protection — includes respirators, masks, canister type masks, supplied-air helmets, etc., for protection of the respiratory system from inhalation of particulate matter, noxious gases and vapors, and oxygen deficiency. Although this rule does not cover engineered protective measures (for example, ventilation), exposure control shall *Page 17 
be accomplished as far as is feasible by accepted engineering methods before considering or instituting use of respirators (see rule 4121:1-3-18 of the Administrative Code).
 [2.] (B) Definitions.
 (6) "Respiratory devices" means:
 (a) "Air-purifying device" means a device which removes contaminants from the atmosphere and can be used only in atmospheres containing sufficient oxygen to sustain life (at least nineteen and one-half per cent by volume at sea level) and within specified concentration limitations of the specific device.
 (i) "Mechanical-filter respirator" means a device which provides respiratory protection against particulate mater [sic], such as nonvolatile dusts, mists, or metal fumes.
 (ii) "Chemical-cartridge respirator" means a device which provides respiratory protection against certain gases and vapors in concentrations not in excess of one-tenth per cent by volume.
 (iii) "Gas mask" means a device which provides respiratory protection against certain specific gases and vapors in concentrations up to two per cent by volume or as specified on the canister label and against particulate matter.
 (b) "Supplied-air device" means a device which delivers breathing air through a supply hose connected to the wearer's facepiece.
 (c) "Self-contained breathing apparatus" means a device which provides complete breathing protection for various periods of time based on the amount of breathing air or oxygen supplied and the breathing demand of the wearer. The basic types of self-contained breathing apparatus are:
 (i) Closed-circuit devices (rebreathers):
 (a) Compressed oxygen type.
 (b) Chemical oxygen type. *Page 18 
 (c) Liquid oxygen type. (ii) Open-circuit devices:
 (a) Demand type.
 (b) Pressure demand type.
 [3.] (C) Specific requirements of general application.
 (1) Personal protective equipment furnished by the employer shall be issued to the employee in sanitary and proper condition so that it will effectively protect against the hazard involved.
 [4.] (F) Respiratory equipment.
 (1) The employer shall furnish approved respiratory equipment where there are air contaminants as defined in paragraph (B)(1) of rule 4121:1-3-01 [now 4123:1-3-01] of the Administrative Code. It shall be the responsibility of the employee to use the respirator or respiratory equipment provided by the employer, guard it against damage and report any malfunction to the employer (see sections 4101.12 and 4101.13 of the Revised Code). Note: See appendix to this rule for basic guide for selection of respirators.
 The following definitions are also relevant:
 4123:1-3-01 Scope and definitions
 (A) Scope.
 The purpose of this chapter of the Administrative Code is to provide safety for life, limb and health of employees engaged in construction activity. * * *
 * * *
 (B) Definitions.
 (1) "Air contaminants" means hazardous concentrations of fibrosis-producing or toxic dusts, toxic fumes, toxic mists, toxic vapors, or toxic gases, or a combination of these, suspended in the atmosphere. *Page 19 
 (2) "Approved" means accepted or certified by a nationally recognized testing agency, such as "Underwriters' Laboratories," "Factory Mutual Engineering Corporation," or a responsible governmental agency.
 * * *
 (15) "Hazardous concentrations" (as applied to air contaminants) means concentrations which are known to the employer to be in excess of those which would not normally result in injury to an employee's health if the employee had not been previously exposed to such air contaminants.
 {¶ 32} Relator first argues that the commission abused its discretion in finding that its failure to provide adequate respiratory protection to its employees proximately caused claimant's injury. Relator cites this court's decision in [State ex rel.] Taliaferro Enterprises v.Indus. Comm., Franklin App. No. 01AP-1374, 2002-Ohio-3703, in support of this argument. However, as will be explained hereinafter, theTaliaferro case only applies to one of the violations found by the commission.
 {¶ 33} In Taliaferro, the commission found a violation of former Ohio Adm. Code 4121:1-5-17(F)(1) which is now found at 4123:1-5-17(F)(1) and provides, in pertinent part:
 (F) Respiratory protection.
 (1) Where there are air contaminants as defined in rule 4121:1-5-01 of the Administrative Code, the employer shall provide respiratory equipment approved for the hazard. It shall be the responsibility of the employee to use the respirator or respiratory equipment provided by the employer, guard it against damage and report any malfunction to the employer. Note: See appendix to this rule for basic guides for the selection of respirators.
In finding a violation, in Taliaferro, the commission stated as follows:
 "It is the order of the Staff Hearing Officer that the employer violated 4121:1-5-17(F)(1) by failing to provide respiratory equipment approved for the hazard. The Staff Hearing Officer finds that the employer had purchased respiratory *Page 20 equipment and provided it to the claimant. The Staff Hearing Officer finds that the claimant's first declaration by way of a questionnaire in the claim file to be the most accurate that the employer provided a respiratory device and he used such a device. However, the employer failed to purchase a respiratory `device, which provides respiratory protection against particulate matter, such as non volatile dust, mists or metal fumes' as specified by O.A.C. 4121:1-5-01(B)(110). The Medical evidence on file establishes without a doubt that the claimant developed dangerous high level of lead in his blood, that the only reasonably contact that the claimant would have been exposed to lead was at his place of employment. The Staff Hearing Officer finds that the employer's failure to purchase a respirator equipped for the hazard is the proximate cause of the claimant's industrial injury. [Emphasis added.] ["]
Id. at ¶ 69.
 {¶ 34} In Taliaferro, the employer filed a mandamus action in this court and argued:
 In the present action, the employer acknowledges that it was required to comply with Ohio Adm. Code 4121:1-5-17(F)(1). The employer contends, however, that it complied with that section's requirement to "provide respiratory equipment approved for the hazard." The employer argues that, although the commission was correct in concluding that the employer purchased and provided the two dual-function respirators, the commission had no evidence to support its conclusion that these respirators were not "approved for the hazard."
Id. at ¶ 80.
 {¶ 35} In finding that a writ of mandamus was appropriate, this court adopted the decision of its magistrate after finding that the commission's order was fatally unclear. Specifically, the commission had found that the employer provided respirators with cartridges; however, it was unclear on what evidence the commission had relied in finding that those respirators were not "approved" as required by the code section. This court *Page 21 
found that the commission was required to consider whether the type of respirator provided was "approved for the hazard." It was not enough to find a violation simply because the claimant had sustained an injury by virtue of breathing in certain fumes. However, in returning the matter to the commission, this court noted that the commission could still find a violation of section (F)(1) provided that the commission was able to make the required findings based upon the evidence.
 {¶ 36} In applying this court's decision in Taliaferro to the facts of this case, this court's reasoning would only apply to the fourth violation found by the commission, that the employer violated Ohio Adm. Code 4123:1-3-03(F)(1). As in Taliaferro, the commission did not determine whether the respirator provided by relator was "approved for the hazard" to which claimant was exposed. As such, a writ of mandamus is appropriate with regard to this particular violation. This court should order the commission to vacate its finding of a violation of Ohio Adm. Code 4123:1-3-03(F)(1) and order the commission to review the evidence and determine whether the respirator was "approved for the hazard."
 {¶ 37} Although the Taliaferro case does apply to the fourth violation found, it does not apply to the other violations found. Specifically, Ohio Adm. Code 4123:1-3-03(C)(1) provides that the personal protective equipment furnished by the employer shall be issued to the employee in sanitary and proper condition so that it will effectively protectagainst the hazard involved. This standard differs significantly from the standard in section (F)(1). Here, the employer does not escape liability as long as the respirator is approved; the respirator must actually and effectively protect the employee against the hazard involved. Because claimant's claim was allowed for arsenic and lead poisoning as *Page 22 
a result of exposure at work, the commission found that the respirator provided by relator did not effectively protect claimant against the hazard.
 {¶ 38} Relator argues that the results of certain blood testing of claimant performed at different points in time contradicts the finding that any violation which occurred in 2002 caused claimant's injuries. Relator argues that claimant's allowed conditions of "toxic effects of arsenic and lead" are chronic in nature, extending back to 1999, and that the statute of limitations has expired and bars claimant from asserting a VSSR. The magistrate rejects this argument. No matter when claimant was first exposed to arsenic and lead, the date of diagnosis in this case is July 16, 2002. Relator cannot escape potential liability for a VSSR by refusing to participate in the BWC's investigation, failing to appear for the hearing on the VSSR and then asserting that the violations, if any, actually occurred in 1999 and are barred by the statute of limitations. Furthermore, a review of the substantial evidence in the record indicates that fit testing of respirators is not simply to be done at the time that the respirator is initially provided to the employee. Instead, the industry recognizes a continuing obligation and responsibility on the part of the employer to fit test at least every six months. There is some evidence in the record to support the finding that claimant was not fit tested as required. As such, in spite of the fact that the literature demonstrates that lead poisoning occurs over time since the lead is originally deposited in the bones, there is an issue as to whether relator met its responsibility to fit test claimant at other times, and not simply in 1999 when relator indicates it first issued a respirator to claimant. Further, the magistrate finds that relator's arguments that claimant's chronic exposure came from other, non-work-related sources, is not supported by the record. Relator contends that, in reality, the evidence shows that *Page 23 
claimant's chronic exposure is not work related. Claimant's workers' compensation claim is allowed for these conditions. Therefore, the issue of whether or not the conditions are work related has already been determined and relator cannot reargue that fact now. Further, relator has waived this argument because of its failure to participate and submit evidence in the proceedings below. Therefore, relator has not shown that the commission abused its discretion in finding a violation of Ohio Adm. Code 4123:1-3-03(C)(1).
 {¶ 39} Lastly, relator argues that the commission cannot find a violation of Ohio Adm. Code 4123:1-3-03(A)(3) or (B)(6) because those sections do not provide any specific requirements which relator could have violated. In reviewing these sections, the magistrate finds that they fit together and that, except for the fact that the commission did not make the requisite findings, a violation of these sections could, in fact, be found.
 {¶ 40} Ohio Adm. Code 4123:1-3-03(A) provides for the scope of the section regarding personal protective equipment and section (3) specifically identifies respiratory protection and puts employers on notice that they are required to utilize accepted engineering methods to minimize employees' exposure before considering or instituting the use of respirators. Further, Ohio Adm. Code 4123:1-3-03(B)(6) defines different respiratory devices. The magistrate finds that the commission could find a violation; however, certain findings must be made as to which section under subparagraph (6) was violated. For instance, Ohio Adm. Code 4123:1-3-03(B)(6)(a) requires an air purifying device that removes contaminants from the atmosphere and indicates that it is appropriately used in atmospheres containing at least 19 and one-half percent by volume at sea level of oxygen. The commission did not find any findings regarding the specific *Page 24 
conditions to which claimant was exposed. If the commission was to find that the respirator supplied to claimant was an air purifying device and if the commission was to find that the atmosphere did not contain sufficient oxygen to sustain life, then the commission could find a violation of Ohio Adm.Code(B)(6) and (A)(3). However, the commission failed to make these findings and when this matter is returned to the commission, a violation of these sections can only be made if the commission makes these findings.
 {¶ 41} Based on the findings, the magistrate finds that relator has not demonstrated that the commission abused its discretion when it found that relator violated Ohio Adm. Code 4123:1-3-03(C)(1). However, because the commission failed to make the necessary factual findings to support violations of Ohio Adm. Code 4123:1-3-03(A)(3), (B)(6) and (F)(1), this court should issue a writ of mandamus ordering the commission to vacate that part of its order finding violations of these three sections and conduct further proceedings consistent with this decision.
 *Page 1