OPINION
{¶ 1} Relator, R.A.M.E., Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission"), to vacate its award to respondent Shane Pawich ("claimant") for relator's violation of a specific safety requirement ("VSSR"). *Page 2 
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ. R. 53(D) and Loc. R. 12(M) of the Tenth District Court of Appeals. The magistrate examined the evidence and issued a decision, including findings of fact and conclusions of law, which is appended to this opinion. Therein, the magistrate concluded the staff hearing officer ("SHO"), abused its discretion in relying on claimant's hearing testimony without any consideration or explanation of claimant's prior contradictory deposition testimony. Therefore, the magistrate recommended that this court issue a writ of mandamus remanding the matter back to the commission for further consideration.
 {¶ 3} Claimant has filed the following objection to the magistrate's decision:
 THE MAGISTRATE INCORRECTLY DECIDED THAT THE MAGISTRATE IS THE APPROPRIATE PERSON TO WEIGH THE EVIDENCE WHEN THE MAGISTRATE DETERMINES THERE IS "CONTRADICTORY" STATEMENTS MADE BY THE INJURED WORKER. IT IS THE INDUSTRIAL COMMISSION OF OHIO WHICH DETERMINES THE CREDIBILITY OF WITNESSES AND THE WEIGHT THE EVIDENCE IS GIVEN IN FACTUAL DETERMINATIONS, NOT THE MAGISTRATE NOR THIS COURT.
 {¶ 4} The commission has filed the following four objections to the magistrate's decision:
 1. The Magistrate's decision, although a limited writ, implies that an employer may charge the worker a fee for the cost of a safety device that the employer is required to provide.
 2. The Magistrate's decision and reasoning, implies that there is a factual issue for further determination when this matter is returned for further proceedings.
 3. If on the other hand the magistrate's decision simply requires a better statement of the hearing officer's analysis and/or reasoning, the clarification would only be a statement of what the law already requires. *Page 3 
 4. The law/code [Ohio Admin. Code 4123 1-3-03(J)] already requires that the safety equipment "shall be provided by the employer"; and, "it shall be the responsibility of the employee to wear such equipment when engaged in securing or shifting thrustouts, . . .* * *." The words "such equipment" refer to the mandated equipment to be provided by the employer.
(Emphasis sic.)
 {¶ 5} This cause is now before the court for a full review. Upon such review, we find these objections well-taken.
 {¶ 6} Relator has also asserted that though the magistrate's findings of fact are correct, they are legally insufficient. We, however, find the magistrate has properly determined the facts, and we adopt the magistrate's findings of fact as our own. Additionally, in her conclusions of law, the magistrate correctly sets out the standards that we must use to determine whether to issue a writ in this case, and we adopt these conclusions as our own. However, for completeness, a brief summary of the facts is necessary at this juncture.
 {¶ 7} Claimant was working for relator when he sustained a work-related injury on February 9, 2004. Specifically, claimant fell off a roof on which he was working. Multiple claims were allowed, and claimant filed an application for an additional award for a VSSR alleging violations of the Ohio Administrative Code. After a hearing on December 5, 2007, the SHO determined claimant established that relator had violated the Ohio Administrative Code, specifically Ohio Adm. Code 123:1-3-03(J)(1), by failing to provide claimant with a safety harness.
 {¶ 8} The magistrate noted claimant's deposition testimony that while he was offered a safety harness, there was a deposit charged for that harness. Because he did *Page 4 
not want to risk losing the deposit, claimant testified he told relator he could use his brother's harness. At the hearing, claimant testified he received no safety training and was not issued any safety equipment. The magistrate viewed this testimony as contradictory and found that because the commission did not reconcile the contradictory statements, it abused its discretion in relying on claimant's testimony from the hearing. We disagree.
 {¶ 9} Questions of credibility and the weight to be given evidence are within the discretion of the commission as fact finder. State ex rel.Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165. Thus, to the extent the SHO found claimant's testimony at the hearing to be credible, i.e., that he was not given a safety harness, we find no abuse of discretion in the SHO's credibility determination. Moreover, we do not find claimant's testimony to necessarily be at odds. Relator did not issue a safety harness to claimant but, rather, relator offered claimant a safety harness for a fee that relator said would be refunded if the harness was returned in good condition. Issuing required safety equipment and offering safety equipment for a fee are not synonymous; thus, claimant's testimony that he was offered a safety harness for a required deposit, and his testimony that he was not issued a safety harness, is not necessarily contradictory. For these, reasons, we do not find the commission abused its discretion in determining relator violated Ohio Adm. Code 4123:1-3-03(J)(1) and in awarding claimant an award for a VSSR. Accordingly, we sustain the objections filed by claimant and the commission.
 {¶ 10} Following an independent review of this matter, we find that the magistrate properly determined the facts but erred in finding the commission abused its discretion. Therefore, we adopt the magistrate's findings of fact and, to the extent stated in our *Page 5 
opinion, adopt, in part, the magistrate's conclusions of law. For the reasons stated herein, we deny relator's request for a writ of mandamus.
Objections sustained; writ denied.
SADLER and TYACK, JJ., concur. *Page 6 
 APPENDIX MAGISTRATE`S DECISION IN MANDAMUS {¶ 11} Relator, R.A.M.E., Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio *Page 7 
("commission") to vacate its award to respondent Shane Pawich ("claimant") for relator's violation of a specific safety requirement ("VSSR").
Findings of Fact: {¶ 12} 1. Claimant sustained a work-related injury while working for relator. Claimant had begun his employment with relator on January 21, 2004, and the injury occurred on February 9, 2004.
 {¶ 13} 2. Relator, a Pennsylvania company, had been awarded the roofing contract for the Western Local Schools Project located in Latham, Ohio.
 {¶ 14} 3. On the day of injury, claimant was involved with several other employees rolling out the roofing felt and placing insulation boards on the roof of the project. As he was rolling the felt, claimant fell off the roof and was injured. Claimant's claim has been allowed for "abrasion face; closed fracture right tibia; sprain left ankle; sprain left wrist; closed fracture right ankle; closed fracture right astragalus; reflex sympathetic dystrophy right lower limb."
 {¶ 15} 4. On February 3, 2006, claimant filed an application for an additional award for a VSSR. Claimant alleged violations of the following Ohio Administrative Code sections: 4123:1-3-03(J)(1) through (7), safety belts, lifelines and lanyards; 4123:1-3-03(L), safety nets; and 4123:1-3-09(F)(1) and (2), roofing brackets.
 {¶ 16} 5. Numerous depositions were taken and submitted at the hearing. With regards to this mandamus action, the magistrate finds the following testimony to be especially relevant: (a) In his deposition, claimant testified that at the time he was hired, he was offered a safety harness; however, there was a deposit charged for that harness which would be taken out of claimant's first paycheck. Claimant indicated that, at a *Page 8 
previous job, he needed a float jacket and his employer charged him a $60 deposit which would be refunded should claimant no longer work for that employer and turned in the float jacket in good condition. When claimant left that job, he turned in his float jacket; however, the employer never returned the $60 to him. Claimant testified that, because his brother had a harness which claimant could use and because he did not want to lose another deposit, claimant informed relator that he had a safety harness available and did not need the one offered to him. (b) At the hearing before the staff hearing officer ("SHO"), claimant testified that he received no safety training and was not issued any safety equipment; specifically, he was not issued a safety harness. At the hearing, claimant did not indicate that a safety harness had been offered; he merely indicated that he borrowed one from his brother. (c) Bryon Minor was also hired by relator as a laborer. In his deposition testimony, Minor indicated that there was no perimeter line erected on the roof of the school and that, although he was wearing his harness, there were no means provided for him to tie off. Specifically, Minor stated that there were no retractables provided. Minor indicated that, in his opinion, it was unusual to work without a perimeter line and retractors and further indicated that relator did not designate any employees to act as "spotters" that day. (d) Jason Mounts was also hired by relator as a laborer. In his deposition, Mounts testified that he received both a hard hat and harness at the worksite. Mounts acknowledged that he was not tied off on the day of claimant's accident and that, in fact, it was a pain to tie off. Further, Mounts testified that he was not specifically told to tie off. Also, Mounts testified that he did not recall a perimeter line being in place at the time claimant fell; however, a perimeter line was put in place after claimant's accident. Mounts also indicated that he saw retractables on the roof; however, *Page 9 
they were not being used. Further, Mounts testified that there were regular safety meetings after claimant's accident. Lastly, Mounts testified that the requirement of tying off was not enforced and that his supervisor, Adam Waggett, knew that employees were not tied off. (e) Chris Groome was also hired by relator as a laborer/foreman. In his deposition, Groome testified that he was issued a hard hat, safety glasses, and a harness with a lanyard. Groome stated that he required the employees he supervised to be tied off 100 percent of the time. However, Groome stated that he never supervised claimant. Further, Groome testified that there was no perimeter line at the time of claimant's accident. Lastly, Groome stated that the Western Local Schools Project was small. Because there was little room, a safety line was set up; however, there were no retractables. Groome stated that there are three ways to enforce the perimeter: (i) retractables (personal), (ii) buddy system (one-on-one), and (iii) monitor system (one employee watching the other employees). Groome stated that the Western Local Schools Project had 20 percent monitoring and 80 percent tie off. (f) Adam Waggett was also hired relator as a foreman/laborer. In his deposition, he testified that he was issued a harness, rope grabs and a lanyard. Waggett acknowledged that he had received a violation for failing to tie off on more than one occasion. As a foreman, Waggett testified that he was to be sure that everyone had their safety equipment and, if an employee did not, he was to issue one. On February 9, 2004, Waggett was claimant's supervisor. Waggett testified that he did not remember whether claimant had a harness that day or if he was tied off. Further, Waggett testified that he did not know if a perimeter system was in place; however, he testified that a perimeter system would have been required for the area in which claimant was working. According to Waggett, it was not his responsibility to *Page 10 
insure that the perimeter system was in place. Waggett testified that Minor was responsible for setting up the perimeter system. According to Waggett, Minor was in charge of the area where claimant was working that day and Waggett was not actually in that vicinity at the time of claimant's accident.
 {¶ 17} 6. A hearing was held before an SHO on December 5, 2007. The SHO determined that claimant had established that relator had violated one of the above-noted Ohio Administrative Code sections. Specifically, the SHO determined that relator had violated Ohio Adm. Code 123:1-3-03(J)(1) by failing to provide claimant with a safety harness. The SHO relied solely upon the following evidence in reaching that decision:
 There was extensive testimony, both live and documentary, presented at the hearing on the issue of whether or not the injured worker was provided with the required personal protective equipment. After consideration of all this evidence, the Staff Hearing Officer finds the weight of the evidence supports the claimant's testimony that he was not. In evaluating the credibility of the claimant, the Staff Hearing Officer notes that it was undisputed that at about the time the injured worker sustained his injury of record, he was in the possession of a safety harness which belonged to his brother. There is no reason that the claimant would seek to borrow a safety harness belonging to another person if his employer had provided him with one.
 {¶ 18} 7. Relator raised several defenses including claimant's unilateral negligence, his failure to use the provided safety equipment, and relator's assertion that claimant's injuries were due to his intoxication from illegal or prescription drugs. The SHO found that none of those defenses were applicable based upon the finding that relator failed to provide the safety equipment. With regards to claimant's alleged use of drugs on the day of his accident, the SHO noted that relator was challenging the allowance of the *Page 11 
entire claim and, if relator was successful and claimant's claim was ultimately disallowed, the SHO noted that any VSSR finding would be vacated.
 {¶ 19} 8. Relator's motion for rehearing was denied by order mailed March 3, 2008.
 {¶ 20} 9. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 21} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 22} In regard to an application for an additional award for a VSSR, the claimant must establish that an applicable and specific safety requirement exists, which was in effect at the time of the injury, that the employer (relator herein) failed to comply with the requirement, and the failure to comply was the cause of the injury in question. State exrel. Trydle v. Indus. Comm. (1972), 32 Ohio St.2d 257. The interpretation of a specific *Page 12 
safety requirement is within the final jurisdiction of the commission.State ex rel. Berry v. Indus. Comm. (1983), 4 Ohio St.3d 193. Because a VSSR award is a penalty, however, it must be strictly construed, and all reasonable doubts concerning the interpretation of the safety standard are to be construed against its applicability to the employer. State exrel. Burton v. Indus. Comm. (1989), 46 Ohio St.3d 170. The question of whether an injury was caused by an employer's failure to satisfy a specific safety requirement is a question of fact to be decided by the commission subject only to the abuse of discretion tests. Trydle; Stateex rel. A-F Industries v. Indus. Comm. (1986), 26 Ohio St.3d 136; andState ex rel. Ish v. Indus. Comm. (1985), 19 Ohio St.3d 28.
 {¶ 23} In the present case, it is this magistrate's decision that this court should issue a writ of mandamus remanding this matter back to the commission for further consideration.
 {¶ 24} The SHO determined that relator violated Ohio Adm. Code 123:1-3-03(J)(1) which provides:
 (J) Safety belts, lifelines and lanyards.
 (1) Lifelines, safety belts or harnesses and lanyards shall be provided by the employer and it shall be the responsibility of the employee to wear such equipment when engaged in securing or shifting thrustouts, inspecting or working on overhead machines that support scaffolds or on other high rigging, when working on steeply pitched roofs, when working on poles or steel frame construction, when working on all swinging scaffolds, when exposed to hazards of falling where the operation being performed is more than six feet above ground or above a floor or platform, except as otherwise specified in this chapter, and when required to work on stored material in silos, hoppers, tanks, and similar storage areas. Lifelines and safety belts or harnesses shall be securely fastened to the structure and shall sustain a static load of no less than five thousand pounds. *Page 13 
 {¶ 25} The SHO determined that relator did not provide claimant with a safety harness. Specifically, the SHO stated that there was "no reason that the claimant would seek to borrow a safety harness belonging to another person if his employer had provided him with one." In making this finding, the SHO relied solely upon claimant's testimony at the hearing. As noted previously, at the hearing, claimant testified that he was not issued a safety harness and was in the possession of his brother's safety harness. As such, the SHO concluded that relator failed to provide claimant with a safety harness. Although the SHO noted that there was extensive testimony, both live and documentary, on the issue of whether or not claimant was provided with the required personal protective equipment, the SHO found that claimant's testimony at the hearing was credible in spite of the fact that it specifically contradicted his deposition testimony. As noted previously in the findings of fact, in his deposition, claimant testified that relator did offer him a safety harness; however, because relator wanted a deposit for that harness, claimant decided that he would use his brother's safety harness. Claimant testified that he did not want to lose the deposit for the safety harness since he had lost a deposit for a float jacket from his previous employer.
 {¶ 26} Ohio Adm. Code 4123:1-3-03(C)(2) indicates that employees may provide their own protective safety equipment. Specifically, that section provides: "Where employees provide their own protective equipment, such equipment shall give equal or greater protection than that furnished by the employer." Using your own equipment is permissible. Here, claimant was utilizing his own equipment.
 {¶ 27} Counsel for claimant argues that when an employer requires a deposit for safety equipment, the employer has not provided that equipment and has violated the *Page 14 
safety requirements. Counsel argues further that the SHO obviously reached this conclusion.
 {¶ 28} Whether or not charging an employee a deposit for safety equipment constitutes a VSSR, the magistrate finds that it is not clear that the SHO came to that conclusion in this particular case. As noted in the findings of fact, at the SHO's hearing, claimant testified that relator did not give him a safety harness. Claimant did not give testimony about relator requiring a deposit for the harness. This information is in claimant's deposition testimony. As such, contrary to counsel's arguments, it is not clear that the SHO made this finding.
 {¶ 29} In the present case, claimant made two statements: he was offered a safety harness but refused it in lieu of utilizing his brother's safety harness and he was not issued a safety harness. Because claimant's testimony is contradictory, the magistrate finds that the commission abused its discretion in relying on his testimony from the hearing without any consideration of or explanation for his prior contradictory testimony.
 {¶ 30} In finding that a writ of mandamus should be issued, the magistrate notes, however, upon rehearing, the commission may very well still find that relator violated a specific safety requirement. As noted in the findings of fact, there is evidence in the record which, if believed, indicates that relator did not enforce the utilization of safety equipment. An employer cannot provide safety equipment and then knowingly allow its employees to forgo using that equipment. Both Waggett and Minor, who acted as foreman for relator, indicated that the workers at the Western Local Schools Project were not utilizing safety harnesses and were not tying off. Further, claimant testified that he worked for one whole week without his brother's safety harness. Although he had the *Page 15 
safety harness on the day of injury, claimant testified that he was not using it because, in his opinion, the roof was not steep enough and his supervisors did not tell him it was necessary.
 {¶ 31} Based on the foregoing, it is this magistrate's conclusion that relator has demonstrated that the commission abused its discretion by relying solely upon claimant's hearing testimony in spite of the fact that it was completely contradicted by claimant's deposition testimony. Because the commission only cited that evidence in support of its finding of a VSSR, the magistrate finds that this court should issue a writ of mandamus ordering the commission to vacate its order finding that relator violated a specific safety requirement and redetermine the matter after considering all the evidence. *Page 1