THE STATE, EX REL. ISH, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL.

[Cite as State, ex rel. Ish, *v.* Indus. Comm. (1985), 19 Ohio St. 3d 28.]

(No. 83-1458—Decided August 9, 1985.)

*Gallon, Kalniz & Iorio Co., L.P.A., William E. Takacs, William L. Menacher* and *Dorothy B. McCrory,* for relator.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Gerald H. Waterman,* for respondent Industrial Commission.

*Fuller & Henry* and *Richard S. Baker,* for respondent Ransom & Randolph Co.

*Per Curiam.* In her first proposition of law, relator contends the uncontroverted evidence before the commission demonstrated a violation by the employer of the ventilation and exhaust requirements of IC-5-11 and, therefore, that the commission's decision constitutes an abuse of discretion. IC-5-11.03, as it existed at the time of the decedent's employment with Ransom & Randolph, provided in part:

"(A)  Methods of Control

"Air contaminants *shall be minimized* by one or more of the following methods:

"* * *

"(2)  Confine or isolate the contaminant,

"(3) Remove at source. * * *,
"(4) Remove by dilution ventilation,
"(5) Remove by general ventilation * * *." (Emphasis added.)
Insofar as is pertinent to this action, IC-5-11.05 provided:

"(B) DUCTWORK

"The ductwork of the exhaust system shall be of a size suitable for conducting the contaminated air outdoors, or the exhaust ductwork shall provide not less than the minimum transport velocity necessary to remove the particulate material produced by the operation being performed, to a collector.

"(C) DISCHARGE

"The outlet from every separator or from every collector shall discharge the air contaminants collected by the exhaust system, in such manner that the discharged materials shall not re-enter the working area in injurious concentrations."

Relator maintains the uncontroverted evidence before the commission demonstrated that a violation of the above-described specific safety requirements caused the decedent to be exposed to excessive quantities of silica dust resulting in the contraction of silicosis. In support of this contention, relator relies upon the affidavits of Leo L. Beaudry and Donald G. Simpson, two of the decedent's fellow co-workers.

In his April 1, 1982 affidavit, Simpson stated that although the employer had installed several dust collectors, the pipes that ran from the collectors would often fill with dust and have to be cleaned on a monthly basis. He also indicated that while the company provided respirators for its employees, dust was nevertheless present in large quantities throughout the plant. Beaudry also indicated in his affidavit that while a ventilation system was in place, it would frequently have to be cleaned after closing hours or on weekends. He further indicated that the ventilation system collected the silica dust into hoppers inside the plant, and that when the hoppers were emptied into trucks outside the facility, dust would blow back into the plant.

Relator also relies upon the May 1976 report of Richard M. Maykowski, an industrial hygienist with the commission. In his report, Maykowski recommended that the employer institute a program to reduce silica dust, including the establishment of a routine maintenance system to clean and check the dust collector systems in order to ensure their safe operation. Apparently, tests conducted by Maykowski revealed concentrations of silica dust in excess of standards prescribed by the National Institute for Occupational Safety and Health ("NIOSH") and the American Conference of Governmental Industrial Hygienists ("ACGIH").[2] It is

---

[2] It is firmly established that in order for an employer to be subject to an additional award for the violation of a specific safety requirement, the requirement must have been "* * * enacted either by the General Assembly or by an order of the Industrial Commission."

relator's contention that when this report and the aforementioned affidavits are read together, the commission was duty-bound to allow the application for the violation of a specific safety requirement.

Respondent commission contends otherwise, averring that the most that can be said in favor of relator's argument is that a disputed factual situation existed which the commission resolved against the relator. As was recently stated in *State, ex rel. Roberts,* v. *Indus. Comm.* (1984), 10 Ohio St. 3d 1, 4: "It is firmly established in this state that the determination of disputed factual situations as well as the interpretation of a specific safety requirement is within the final jurisdiction of the commission, and subject to correction by action in mandamus only upon a showing of an abuse of discretion. *State, ex rel. Allied Wheel Products, Inc.,* v. *Indus. Comm.* (1956), 166 Ohio St. 47 [1 O.O.2d 190]; *State, ex rel. Cox, supra* [(1981), 67 Ohio St. 2d 235 (21 O.O.3d 147)]. See, also, *State, ex rel. Samkas,* v. *Indus. Comm.* (1982), 70 Ohio St. 2d 279 [24 O.O.3d 364]." Only in those instances where there is no evidence upon which the commission could have based its factual conclusions will an abuse of discretion be held to exist. *State, ex rel. Posey,* v. *Indus. Comm.* (1984), 12 Ohio St. 3d 298-299; *State, ex rel. Questor Corp.,* v. *Indus. Comm.* (1982), 70 Ohio St. 2d 240, 241 [24 O.O.3d 334].

The evidence submitted for the commission's consideration included copies of records pertaining to the purchase and use of respirators, and the installation and use of a ventilating system in 1955 and 1956, which was upgraded in 1967, 1970 and 1972, as well as copies of state hygienists' on-site inspections. A special investigator from the commission, Jeffrey L. Miller, conducted an examination into the alleged noncompliance with the cited specific safety requirements. It was the commission's conclusion that the installation and upgrading of the dust collector systems did not violate the subject safety regulations.

An essential ingredient in the commission's decision was its conclusion that IC-5-11.03 required a "minimization" of air contaminants and not a dust-free environment. In view of the well-settled principle that the interpretation of a specific safety requirement is within the final jurisdiction of the commission, we are unable to conclude that this interpretation of the requirement constitutes an abuse of discretion. *State, ex rel. Allied Wheel Products, Inc.,* v. *Indus. Comm., supra,* at 50; *State, ex rel. Roberts,* v. *Indus. Comm., supra,* at 4.

Several years prior to the filing of relator's application, Ransom & Randolph instituted an intensive dust control program whereby new

---

*State, ex rel. Trydle,* v. *Indus. Comm.* (1972), 32 Ohio St. 2d 257 [61 O.O.2d 463], paragraph two of the syllabus; *State, ex rel. Roberts,* v. *Indus. Comm.* (1984), 10 Ohio St. 3d 1, 3. Therefore, the contaminants in excess of the levels prescribed by NIOSH and ACGIH cannot be made a basis for an additional award since neither recommendation was adopted by either the General Assembly or the Industrial Commission as a specific safety requirement.

machinery was acquired to reduce the production of dust in the manufacturing process. Thus, the commission was unable to conduct an on-site inspection under circumstances resembling those existing during the decedent's employ. Nevertheless, the commission had before it the design and operating capacities of the dust collection system which was in place during the decedent's tenure with Ransom & Randolph, and it was familiar with the employer's manufacturing process during the relevant time period. As such, we reject relator's contention that the commission's decision is unsupported by the record.

Next, relator contends that even if sufficient ventilating equipment had been installed in the plant, nevertheless there is an implied duty to maintain and operate the equipment so as to continue to minimize harmful contaminants. The commission does not contest this reasoning. However, relator then concludes in summary fashion that because the ventilating equipment collected dust, some of which remained in the pipes until it was removed when the system was cleaned on a monthly basis, that the ventilating equipment was constantly "clogged" and therefore did not minimize air contaminants.

The commission appears to have properly rejected relator's argument when the staff hearing officer concluded that although some dust would necessarily accumulate in the ventilation pipes due to electrically charged particles, developing whirlpools of air, and the weight of silica dust, this did not lead to the conclusion that the pipes became clogged. Moreover, the staff hearing officer viewed the monthly cleaning procedure as "normal." Again, in view of the commission's familiarity with subject ventilation system, we conclude this finding is not tantamount to an abuse of discretion.

Based on the foregoing, we are unable to conclude that the commission abused its discretion in denying relator's application for an additional award claiming violations of specific safety requirements. The record discloses that the commission was presented with a disputed factual situation regarding whether the alleged violations actually occurred. Absent an abuse of discretion, neither the commission's determination of a disputed factual situation nor its interpretation of a specific safety requirement will be subject to attack via an action in mandamus. *State, ex rel. Roberts, supra.* See, also, *State, ex rel. Morrissey,* v. *Indus. Comm.* (1985), 18 Ohio St. 3d 285.

Accordingly, the writ prayed for is denied.

*Writ denied.*

SWEENEY, LOCHER, DOUGLAS and WRIGHT, JJ., concur.

HOLMES, J., concurs in judgment only.

CELEBREZZE, C.J., and C. BROWN, J., dissent.

CELEBREZZE, C.J., dissenting. I dissent from today's decision because I believe the commission abused its discretion in failing to allow the application for a violation of a specific safety requirement. I agree with an initial finding that the employer had in place exhaust and ventilation systems designed to prevent exposure to silica dust. However, relator's uncontroverted evidence conclusively establishes that during the time the decedent was exposed to this deadly contaminant, the equipment was ineffectively functioning and was not maintained in a manner which ensured "minimization" of air contamination. There is simply insufficient credible evidence in the record to support the commission's speculative inference that because the equipment existed, it functioned effectively.

I am also disturbed by the majority's failure to address or even acknowledge one of relator's contentions. In proposition of law number four, relator contends the application of our decision in *State, ex rel. Mitchell,* v. *Robbins & Myers, Inc.* (1983), 6 Ohio St. 3d 481, operates in favor of the issuance of the writ on the basis of the establishment in that case of a standard requiring the commission's determination to be supported by substantial, probative and reliable evidence. According to relator, the only substantial, probative and reliable evidence in the commission's file supports the claim.

First, it is noteworthy that the order at issue predates *Mitchell* and this court has expressly declined to give *Mitchell* retroactive application. *State, ex rel. Hudson,* v. *Indus. Comm.* (1984), 12 Ohio St. 3d 169, 171, at fn. 1; *State, ex rel. Burdette,* v. *Dayton Walther Corp.* (1984), 14 Ohio St. 3d 29, 31; *State, ex rel. Woodard,* v. *Frigidaire* (1985), 18 Ohio St. 3d 110, 113. Second, *Mitchell* did not concern the some-evidence rule nor did it substitute in its place a different test to determine the sufficiency of the evidence in support of the commission's decision. Instead, *Mitchell* directed the commission to comply with its statutory duty to specifically state which evidence and only that evidence relied upon to reach its conclusion, accompanied by a brief explanation stating why the claimant is or is not entitled to benefits. *Id.* at 483-484. The purpose behind *Mitchell* was primarily twofold. First, it will make employers and employees alike better aware of why requested benefits are either being granted or denied; and, second, the decision constituted an effort to reduce an ongoing practice whereby medical evidence, not relied upon at the commission level, was later utilized to support the commission's decision in subsequent mandamus actions. Accordingly, although not specifically addressed by the majority, relator's fourth proposition of law is without merit.