THE STATE EX REL. SCOTT, APPELLANT, *v.* INDUSTRIAL COMMISSION

OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Scott v. Indus. Comm.,* 136 Ohio St.3d 92,

2013-Ohio-2445.]

*Workers' compensation—Alleged violation of specific safety requirement—Ohio*
*Adm.Code 4123:1-5-17(F) and 4123:1-5-18(C), (D), and (E)—Judgment*
*denying writ of mandamus to compel Industrial Commission to allow*
*award affirmed.*

(No. 2011-1922—Submitted May 8, 2013—Decided June 18, 2013.)

APPEAL from the Court of Appeals for Franklin County, No. 10AP-713,

2011-Ohio-5467.

_____

O'CONNOR, C.J.

{¶ 1} Appellant, Troy A. Scott, appeals from the judgment of the Tenth District Court of Appeals denying his request for a writ of mandamus that would require appellee Industrial Commission to vacate its order denying his application for an award for violation of specific safety requirements ("VSSRs") at his workplace and to find that he is entitled to such an award.

{¶ 2} The court of appeals determined that Scott had failed to prove that the Industrial Commission abused its discretion when it denied his application based on its conclusion that Scott's employer, appellee Country Saw & Knife, Inc. ("Country Saw"), had not violated the specific safety requirements in Ohio Adm.Code 4123:1-5-17(F) and 4123:1-5-18(C), (D), and (E).

{¶ 3} Because we agree with the court of appeals that Scott did not present sufficient evidence to establish that he was entitled to an award for a

VSSR, we hold that the commission did not abuse its discretion in denying Scott's application. We therefore affirm the judgment of the court of appeals.

***Relevant Background***

{¶ 4} Scott was employed as a laborer by Country Saw, a business that sharpens and puts carbide teeth on saw blades. His duties included soldering carbide saw tips, sharpening carbide saw blades, and operating a brazing machine that brazed tungsten tips onto saw blades.

{¶ 5} After working at Country Saw for approximately one and a half years, Scott developed respiratory problems from his exposure to metal dust—specifically, dust from cobalt and tungsten. He sought workers' compensation, and his claim was allowed for hard-metal pneumoconiosis, open-wound nasal septum, and related disorders, with a diagnosis date of October 23, 2007.

{¶ 6} Over a year later, on November 25, 2008, Scott applied for an additional award, alleging that Country Saw violated the specific safety requirements in Ohio Adm.Code 4123:1-5-17(F) and 4123:1-5-18(C), (D), and (E) when it failed to provide adequate protection to minimize his exposure to metal particles.

{¶ 7} After a hearing, a staff hearing officer denied Scott's application. In so doing, the staff hearing officer relied on test results from an air sampling conducted at Country Saw on April 16, 2008, by the Occupational Safety and Health Administration ("OSHA"). Those test results demonstrated that the presence of toxic substances in the air in Country Saw's facility was below permissible exposure limits.[1] The hearing officer considered the test results relevant and reliable evidence, citing *State ex rel. Gilbert v. Indus. Comm.*, 116 Ohio St.3d 243, 2007-Ohio-6096, 877 N.E.2d 979, because Country Saw had

---

1. The staff hearing officer stated that OSHA tested only for cobalt, not tungsten. This statement is contradicted by the OSHA test results, which reported the actual exposure amounts of both metals. OSHA concluded that the level of cobalt was below OSHA's permissible exposure limits, but reported "NA" for tungsten because there was no established permissible exposure limit.

made no changes to the ventilation system or any of the processes that existed during the period that Scott was exposed to the materials. The hearing officer specifically noted that Scott had failed to introduce evidence to show that any toxic substance had been present at a level that would trigger the specific safety requirements.

{¶ 8} Scott filed a complaint for a writ of mandamus in the court of appeals. The case was referred to a magistrate, who concluded that Scott had failed to establish that the Country Saw plant contained hazardous concentrations of either cobalt or tungsten dust in an amount necessary to require Country Saw to comply with the specific safety requirements. The magistrate agreed that the OSHA test results constituted some evidence on which the commission could rely to support its decision and that the commission had not misapplied *Gilbert*. The magistrate recommended that the court of appeals deny the request for a writ.

{¶ 9} Scott filed objections to the magistrate's conclusions of law. The court of appeals overruled the objections, adopted the magistrate's decision, and denied the writ. Scott now seeks this court's review.

*Analysis*

{¶ 10} There is no dispute that Scott contracted a devastating lung disease while working at Country Saw and that his workers' compensation claim for that disease was properly approved. The issue in this appeal is whether Scott is entitled to an additional award—one more akin to a penalty—due to his employer's violating specific safety requirements. *State ex rel. Burton v. Indus. Comm.*, 46 Ohio St.3d 170, 172, 545 N.E.2d 1216 (1989) ("a VSSR award is a penalty").

{¶ 11} It is well settled that in order to establish a VSSR claim, the claimant must prove that (1) an applicable and specific safety requirement was in effect at the time of the injury, (2) the employer failed to comply with the requirement, and (3) the failure to comply was the proximate cause of the injury in

question. *State ex rel. Commercial Lovelace Motor Freight, Inc. v. Lancaster,* 22 Ohio St.3d 191, 193, 489 N.E.2d 288 (1986), fn. 1; *State ex rel. Trydle v. Indus. Comm.*, 32 Ohio St.2d 257, 291 N.E.2d 748 (1972).

{¶ 12} Factual questions relevant to proof of a VSSR rest exclusively within the discretion of the commission. *State ex rel. Haines v. Indus. Comm.,* 29 Ohio St.2d 15, 278 N.E.2d 24 (1972). And the interpretation of a specific safety requirement is within the final jurisdiction of the commission. *Burton* at 172; *State ex rel. A-F Industries v. Indus. Comm.*, 26 Ohio St.3d 136, 497 N.E.2d 90 (1986); *State ex rel. Ish v. Indus. Comm.*, 19 Ohio St.3d 28, 31, 482 N.E.2d 941 (1985).

{¶ 13} We review the commission's factual decisions on VSSR only for an abuse of discretion. *Ish* at 32. Because a VSSR award is punitive in nature, however, all reasonable doubts regarding the specific safety requirement's interpretation and applicability must be resolved in the employer's favor. *Burton,* 46 Ohio St.3d at 172, 545 N.E.2d 1216; *State ex rel. Toledo Neighborhood Hous. Servs., Inc. v. Indus. Comm.*, 92 Ohio St.3d 229, 230, 749 N.E.2d 739 (2001).

{¶ 14} With these standards in mind, we turn to the evidence in this case and the legal question that arises from it.

{¶ 15} The court of appeals concluded that the commission did not abuse its discretion when it relied on the OSHA report. The dispositive issue here is whether the OSHA report constituted some evidence upon which the commission could rely to deny Scott's request for a VSSR award.

{¶ 16} The specific safety requirements at issue in this case require an employer (1) to provide respiratory-protection equipment when employees are exposed to hazardous concentrations of air contaminants and (2) to adopt methods to minimize air contaminants in working environments where employees are exposed to hazardous concentrations of air contaminants.

{¶ 17} Ohio Adm.Code 4123:1–5–17(F) provides:

4

(F) Respiratory protection.

(1) Where there are *air contaminants as defined in rule 4123:1-5-01* of the Administrative Code, the employer shall provide respiratory equipment approved for the hazard. It shall be the responsibility of the employee to use the respirator or respiratory equipment provided by the employer, guard it against damage and report any malfunction to the employer.

(Emphasis added.)

{¶ 18} Ohio Adm.Code 4123:1–5–18(C), (D), and (E) provide various methods to minimize air contaminants in working environments where employees are exposed to *hazardous concentrations of air contaminants.*[2]

---

2. Ohio Adm.Code 4123:1-5-18 provides:

(C) *Where employees are exposed to hazardous concentrations of air contaminants*, the air contaminants shall be minimized by at least one of the following methods:
(1) Substitute a non-hazardous, or less hazardous material;
(2) Confine or isolate the contaminants;
(3) Remove at or near source;
(4) Dilution ventilation;
(5) Exhaust ventilation; (for examples of exhaust ventilation, see rule 4123:1-5-99.2 of the Administrative Code).
(6) Using wet methods to allay dusts. Note: Good housekeeping is of definite value in minimizing air contaminants created by dusts.
(D) Exhaust systems: machinery and equipment.
(1) Grinding, polishing and buffing.
(a) Abrasive wheels and belts.
(i) Abrasive wheels and belts shall be hooded and exhausted *when there is a hazardous concentration of air contaminants*.
(ii) This does not apply to abrasive wheels or belts:
*(a)* Upon which water, oil, or other liquid substance is used at the point of the grinding contact; or
*(b)* To small abrasive wheels used occasionally for tool grinding.
(b) Separate exhaust systems.
Abrasive wheel and buffing wheel exhaust systems shall be separate when the dust from the buffing wheel is of flammable material.

{¶ 19} For the safety requirements to apply, hazardous concentrations of air contaminants must be present in the working environment. The term "air contaminants" is defined as "hazardous concentrations of fibrosis-producing or toxic dusts, toxic fumes, toxic mists, toxic vapors, or toxic gases, or any combination of them when suspended in the atmosphere." Ohio Adm.Code 4123:1-5-01(B)(4). "Hazardous concentrations (as applied to air contaminants)" is defined as "concentrations which are known to be in excess of those which would not normally result in injury to an employee's health." Ohio Adm.Code 4123:1-5-01(B)(74).

{¶ 20} In the record before us, the only evidence of the levels of cobalt and tungsten in the air in the Country Saw plant is the evidence that is in the

---

(2) Generation of toxic materials.

*When toxic materials are generated in hazardous concentrations* during their application, drying, or handling, they shall be minimized or eliminated by at least one of the methods described in paragraph (C) of this rule.

(3) Internal combustion engines.

*Hazardous concentrations of air contaminants* produced by internal combustion engines shall be exhausted.

(E) Exhaust systems - structural requirements.

(1) Exhaust or ventilating fan.

Each exhaust or ventilating fan located less than seven feet above the floor or normal working level shall be guarded.

(2) Ductwork.

Exhaust ductwork shall be sized in accordance with good design practice which shall include consideration of fan capacity, length of duct, number of turns and elbows, variation in size, volume, and character of materials being exhausted.

(3) Discharge.

The outlet from every separator or (collector) *shall discharge the air contaminants collected by the exhaust system, in such manner that the discharged materials shall not re-enter the working area in hazardous concentrations.*

(4) Location of air supply openings or inlets.

Air supply openings or inlets through which air enters the building or room in which the local exhaust system is in operation shall be isolated from any known source of contamination from outside of the building.

(Emphases added.)

OSHA report, which is based on a test conducted several months after Scott's exposure period. We have carefully reviewed that evidence.

{¶ 21} OSHA sampled the air on April 16, 2008, for a total of 404 minutes, using a pump filter attached to the employee who was operating the brazing machine that Scott had operated. OSHA measured 0.03 milligrams of cobalt per cubic meter of air. That amount is below the permissible exposure limit set by OSHA: 0.1 milligrams per cubic meter of air. OSHA also measured 0.33 milligrams of tungsten per cubic meter of air. But OSHA had not established a permissible exposure limit for tungsten at the time of testing. Thus, the evidence from OSHA's testing does not support a finding that Country Saw was required to provide respiratory protection or adopt methods to minimize air contaminants.

{¶ 22} Despite the fact that OSHA's testing did not establish the existence of hazardous concentrations of air contaminants, Scott did not have additional testing done, and he did not produce any admissible evidence that cobalt or tungsten was present in hazardous concentrations for purposes of the safety requirements at issue in this case. Instead, Scott merely challenged the reliability and relevance of the OSHA testing. In so doing, he failed to establish that OSHA's testing was not relevant and reliable.

{¶ 23} Scott presented the testimony of Stephen Stock, a forensic engineer, and his testimony pointed out that it was not clear whether the environment at Country Saw at the time of OSHA's testing was similar to what it was when Scott worked there. But Stock offered no evidence that the conditions were not similar to those when Scott was working.

{¶ 24} The commission found that OSHA's test was relevant and reliable evidence that hazardous concentrations of air contaminants were not present when Scott worked at Country Saw, even though the test was conducted after Scott's exposure period. In reaching this decision, the hearing officer relied on *State ex*

*rel. Gilbert v. Indus. Comm.*, 116 Ohio St.3d 243, 2007-Ohio-6096, 877 N.E.2d 979*,* a case with facts similar to this one.

{¶ 25} In *Gilbert*, Harvey Gilbert developed lung disease, most likely as a result of his long-term exposure to chemicals used in his job cleaning commercial-kitchen exhaust systems. Gilbert filed a workers' compensation claim, which was allowed for a chronic respiratory condition and acute bronchiolitis. He also applied for an additional award for VSSR. More specifically, he alleged a violation of Ohio Adm.Code 4121:1-5-17(F), now Ohio Adm.Code 4123:1-5-17(F). *Id*. at ¶ 3-4.

{¶ 26} The commission denied his application for a VSSR award, finding that Ohio Adm.Code 4121:1-5-17(F) did not apply to Gilbert's employer, because there was no evidence of "hazardous concentrations" of "air contaminants" as those phrases were defined in Ohio Adm.Code 4121:1-5-01(B)(4) and (74), now Ohio Adm.Code 4123:1-5-01(B)(4) and (74). In so doing, the commission relied on results from an OSHA test that was conducted 19 days after Gilbert's exposure period ended. *Id*. at ¶ 26, 28. The commission determined that the employer had not violated the specific safety requirement at issue. *Id.* at ¶ 7-9.

{¶ 27} Gilbert filed a complaint for a writ of mandamus. He argued that because he had developed lung disease from exposure to chemicals, the level of air contaminants he had been exposed to was hazardous. We rejected that argument because it conflicted with the definition of "hazardous concentrations":

> The definition describes concentrations that would not *normally* cause injury. As used in that definition, "normally" is a qualifying term. Inherent in the use of this word is the recognition that some persons may have an abnormal sensitivity to a given substance, for which the employer could not be held accountable. The presence of an occupational disease does not necessarily

> establish that hazardous concentrations of contaminant existed, since a person may have contracted an occupational disease because of abnormal sensitivity to or because of hazardous concentrations of a contaminant.

(Emphasis sic.) *Id*. at ¶ 19.

{¶ 28} Gilbert also objected to the commission's reliance on the OSHA test results as evidence that hazardous concentrations of air contaminants were not present during his exposure period. According to Gilbert, because OSHA sampled the air after his exposure period, the test results were irrelevant. We rejected his argument because the relevance of tests conducted after exposure depends upon whether the work environment changed after the exposure. *Gilbert*, 116 Ohio St.3d 243, 2007-Ohio-6096, 877 N.E.2d 979, at ¶ 26. We held, "[W]here the test environment replicates the earlier exposure conditions, the testing results may be significant." *Id*. at ¶ 26. And we specifically emphasized the importance of the commission's discretion and authority to evaluate each situation individually to determine the relevance of test results, particularly when the only results available are those from a test performed after a problem is alleged. *Id*. at ¶ 27.

{¶ 29} In this case, Scott presented the same arguments to the commission that were addressed in *Gilbert*. Scott argued that the fact that he had developed lung disease from exposure to cobalt and tungsten dust was itself proof that the levels of those toxic substances were hazardous.

{¶ 30} The staff hearing officer evaluated the evidence in light of *Gilbert* and denied Scott's application. The order states:

> The Staff Hearing Officer finds that the testing done after the Injured Worker's exposure is relevant and reliable evidence

9

that there were no harmful exposures before the testing was done. In arriving at this conclusion the Staff Hearing Officer relies on [*Gilbert*] which upheld the denial of a specific safety violation that was based in part upon an OSHA investigation done after the Injured Worker's exposure period. The court found that the report remained relevant because there had been no modifications to the work environment prior to the investigation. In this case, just as in *Gilbert* there have been no changes to the ventilation system or any of the processes that would make the OSHA report unreliable.

Secondly, although the record in this case clearly shows the injured worker suffers from a devastating occupational disease, its presence alone does not automatically establish that hazardous concentrations of a substance existed. Again, the Staff Hearing Officer relies on *Gilbert* wherein the injured worker had urged allowance of his specific safety violation because he had contracted an occupational disease. In response to Mr. Gilbert's position the court stated, "This position[,] from the outset, conflicts with the definition of 'hazardous concentration.' The definition describes concentrations that would not normally cause injury. As used in that definition, 'normally' is a qualifying term. Inherent in the use of this word is the recognition that some persons [may] have an abnormal sensitivity to a given substance, for which the employer could not be held accountable." [*Gilbert* at ¶ 19.]

(Bracketed material added to quote within quote to conform the SHO order to *Gilbert*.)

{¶ 31} We agree with the court of appeals that the commission did not abuse its discretion when it relied on *Gilbert* to support its conclusion that the

OSHA test results constituted some evidence upon which it could rely. And we agree that the commission did not abuse its discretion in denying Scott's application for a VSSR award. Indeed, given our precedent and the paucity of the evidence in this case, reasonable minds could only conclude that Scott did not discharge his burden of establishing that he is entitled to a VSSR award in addition to his extant workers' compensation benefits. Accordingly, we affirm the judgment of the court of appeals denying a writ of mandamus.

Judgment affirmed.

O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

PFEIFER, J., dissents.

————————————

**PFEIFER, J., dissenting.**

{¶ 32} In cases like this—where the employer knows of a potential hazard regarding air quality in its workplace but does not periodically undertake testing to determine whether the air quality is safe and an employee suffers an injury related to air quality—the burden of proof should be placed on the employer to prove that it should not be liable for a violation of a specific safety requirement ("VSSR"). The employer in this case, Country Saw & Knife, Inc. ("Country Saw"), knew long before it hired the claimant, Troy Scott, that the environment in which its employees were working was potentially dangerous. Country Saw's supplier provided Material Safety Data Sheets ("MSDSs") indicating that "[d]ust from grinding * * * has the potential for causing transient or permanent respiratory disease, including occupational asthma and interstitial fibrosis, in a small percentage of exposed individuals"; that "[i]nterstitial fibrosis (lung scarring) can lead to permanent disability or death"; and that "cobalt dust is the most probable cause of such respiratory diseases." Further, the Occupational Safety and Health Administration ("OSHA") had established permissible exposure limits for cobalt and tungsten, above which an employer would be

11

required to supply respiratory equipment to its employees pursuant to Ohio Adm.Code 4123:1-5-17(F) and implement processes for the minimization of air contaminants pursuant to Ohio Adm.Code 4123:1-5-18(C), (D), and (E). But Country Saw never bothered to check the levels of cobalt and tungsten in its workplace—an employee testified that air quality had been checked in 1993, but also testified that he could find no report to substantiate that a test had occurred.

{¶ 33} The MSDS also contained detailed instructions for minimizing dust, but for the most part, Country Saw never implemented precautionary procedures. The comparative knowledge about health threats and the ability to minimize them were widely disparate between Country Saw and Scott: Country Saw had information from its supplier about potential threats and abatement strategies, as well as the wherewithal for testing and abatement, while Scott, on the other hand, had only the expectation, like all employees, that his employer would not put him in a dangerous situation. Scott is now profoundly injured, with no doubt that the cause of his illness was his exposure to metal dust in his workplace.

{¶ 34} This case should be remanded for a shifting of the burden of proof. On remand, the fact that Scott suffered a work-related illness would not in itself be determinative of whether Country Saw violated a specific safety rule; the level of metal dust in the air would determine whether Country Saw is liable. But who should bear the burden of proving what the air-quality levels were at or near the time of the accident? It should certainly be the party who had knowledge of the potential danger and the ability to institute periodic testing. If Scott makes the prima facie case that Country Saw knew of air-quality dangers from its supplier and did not test for air quality and that Scott suffered an injury related to air quality, the burden should shift to Country Saw to prove that it is not liable for a VSSR. Country Saw would have to do better than it did below to make its case—

better than relying on a test performed by OSHA under circumstances that the claimant alleges were not substantially similar to the conditions he worked under.

{¶ 35} The result reached by the majority encourages employers to ignore MSDSs provided by suppliers of potentially dangerous materials and discourages periodic testing of air quality in situations where air contamination is a known risk.

{¶ 36} Finally, the employer in the case relied on by the majority, *State ex rel. Gilbert v. Indus. Comm.*, 116 Ohio St.3d 243, 2007-Ohio-6096, 877 N.E.2d 979, is another employer that failed to check air-quality levels after being informed by a supplier of the potentially dangerous respiratory effects of its product. Since this court failed to place the burden of proof on the employer in that case, *Gilbert* should be overruled.

———————————

Boyd, Rummell, Carach, Curry, Kaufmann & Bins-Castronovo Co., L.P.A., and Walter Kaufmann, for appellant.

Michael DeWine, Attorney General, and Cheryl J. Nester and Colleen C. Erdman, Assistant Attorneys General, for appellee Industrial Commission.

Fitch, Kendall, Cecil, Robinson & Barry Co., L.P.A., and Timothy A. Barry, for appellee Country Saw & Knife, Inc.

———————————