[Cite as *State ex rel. Target Auto Repair Minutemen Select, Inc. v. Morales*, 2020-Ohio-83.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Target Auto Repair Minutemen Select, Inc., | : | |
| | : | |
| Relator, | | |
| | : | No. 18AP-716 |
| v. | | |
| | : | (REGULAR CALENDAR) |
| Josue S. Morales et al., | | |
| | : | |
| Respondents. | | |
| | : | |

---

D E C I S I O N

Rendered on January 14, 2020

---

*Lewis Brisbois Bisgaard & Smith*, *LLP*, *Joseph Fiorello*, and *John R. Christie*, for relator.

*Dave Yost*, Attorney General, and *Eric J. Tarbox*, for respondent Industrial Commission of Ohio.

---

IN MANDAMUS

SADLER, P.J.

{¶ 1}   Relator, Target Auto Repair Minutemen Select, Inc. ("Target"), has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted an award of compensation for the violation of a specific safety requirement ("VSSR") to Josue S. Morales and ordering the commission to deny the award.

{¶ 2}   Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who considered the action on its merits and issued a decision, including findings of fact and conclusions of law, which is appended hereto.  The magistrate concluded Target did not demonstrate that the commission abused its discretion when it determined Morales had met his burden of proving the VSSR as asserted.

Accordingly, the magistrate recommended this court deny Target's request for a writ of mandamus.

{¶ 3}    On May 29, 2019, Target timely filed the following objections to the magistrate's decision:[1]

>    [1.] Any alleged violation concerning the grinder could not have proximately caused Morales' injury; therefore, the Magistrate erred by not dismissing Ohio Admin. Code Sections 4123:1-5-07 and 4123:1-5-12 as potential support for Morales' VSSR claim.
>
>    [2.] The Magistrate erred in failing to recognize the second Staff Hearing Officer placed the burden of proof on Target as opposed to Morales.
>
>    [3.] The Magistrate failed to recognize the Commission conflated the Ohio Administrative Code Sections at issue in reaching its improper VSSR determination.
>
>    [4.] The Magistrate erred in not determining that the VSSR must be denied as Morales' failure to use the proper protective equipment, which the evidence demonstrates was available, precludes the granting of a VSSR.

{¶ 4}    In Target's first objection, Target contends the violation of Ohio Adm.Code 4123:1-5-07, concerning safety guards on hand-held equipment, and Ohio Adm.Code 4123:1-5-12, regarding the employer's responsibility for instructing employees in the safe use of abrasive grinding equipment, could not have been the proximate cause of Morales' injury given the undisputed evidence that the Morales would not have suffered the injury had he chosen to wear the appropriate grinding/cutting mask.  We disagree.

{¶ 5}    The definition of and principles governing the determination of proximate cause in the field of torts are applicable to considerations of proximate cause in the context of the Workers' Compensation Fund.  *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 587 (1991), citing *Oswald v. Connor*, 16 Ohio St.3d 38, 42 (1985), citing *Aiken v. Indus. Comm.*, 143 Ohio St. 113 (1944), syllabus.  It is generally understood that " 'where an original act is wrongful or negligent and in a natural and continuous sequence produces a result which would not have taken place without the act, proximate cause is established,

---

[1] On November 7, 2019, this court granted Target's October 2, 2019 motion for relief from judgment, vacated our August 20, 2019 memorandum decision judgment entry, and reinstated this case to the active docket.

and the fact that some other act unites with the original act to cause injury does not relieve the initial offender from liability.' " *Strother v. Hutchinson*, 67 Ohio St.2d 282, 287 (1981), quoting *Clinger v. Duncan*, 166 Ohio St. 217, 222 (1957).  Additionally, "when two factors combine to produce damage or illness, each is a proximate cause." *Norris v. Babcock & Wilcox Co.*, 48 Ohio App.3d 66, 67 (9th Dist.1988).  *See also Murphy* at 588.  Proximate cause is an issue for the trier of fact.  *Strother* at 288.

{¶ 6}  On this record, there is evidence to support the conclusion that had Target not violated Ohio Adm.Code 4123:1-5-07 and 4123:1-5-12 by removing the guard from the grinder, Morales would not have sustained his injury.  In other words, the evidence shows that Target's violation of the specific safety requirements pertaining to guards on hand-held power tools, in a natural and continuous sequence, produced a result which would not have occurred if the guard had not been removed from the grinder.

{¶ 7}  To the extent that Target claims that Morales' own negligence broke the chain of causation, the magistrate reached the following conclusion:

> Ohio's workers' compensation system is a no fault system and, more specifically, in VSSR proceedings, the injured worker's negligence is only a defense where the employer has first complied with relevant safety requirements. *State ex rel. Internatl. Truck & Engine Corp. v. Indus. Comm.*, 10th Dist. No. 07AP-547, 2008-Ohio-2953.  To that extent, there is evidence in the record on which the second SHO relied that the power grinder was originally equipped with a guard.  At some point in time, that guard was removed and Target knew that it was removed.  As such, Target was not in compliance with the specific safety requirements at the time that Target alleges Morales improperly used the grinder at issue.

(Mag.'s Decision at ¶ 39.)

{¶ 8}  We agree with the magistrate's conclusion that Morales' alleged misuse of the grinder did not impact the causation analysis in this case.  An employee's negligence in failing to protect himself from injury due to an employer's VSSR will never bar recovery because specific safety requirements are " ' "intended to protect employees against their own negligence and folly as well as to provide them a safe place to work." ' " *State ex rel. Byington Builders, Ltd. v. Indus. Comm.*, 156 Ohio St.3d 35, 2018-Ohio-5086, ¶ 40, quoting *State ex rel. Cotterman v. St. Mary's Foundry*, 46 Ohio St.3d 42, 47 (1989), quoting *State ex rel. U.S. Steel Corp v. Cook*, 10 Ohio App.3d 183, 186 (10th Dist. 1983).  It is only

the unilateral negligence of the injured employee that impacts the causation analysis. *Byington* at ¶ 40, citing *State ex rel. Quality Tower Serv., Inc. v. Indus. Comm.*, 88 Ohio St.3d 190, 193 (2000). Thus, Morales' alleged negligence in failing to wear the appropriate mask did not relieve Target from liability for the violation of Ohio Adm.Code 4123:1-5-07 and 4123:1-5-12. Moreover, as will be discussed in connection with Target's second and fourth objections, there is evidence in the record to support the commission's determination that Target did not provide Morales with the proper safety equipment on the date of the injury.

{¶ 9}   For the foregoing reasons, Target's first objection is overruled.

{¶ 10}   In Target's second and fourth objections, Target argues that the commission failed to credit Target's evidence that appropriate grinding/cutting masks were provided by Target and available to Morales on the date of the industrial accident. Accordingly, Target argues the magistrate erred in failing to find an abuse of discretion by the commission in ruling that Target violated Ohio Adm.Code 4123:1-5-17. Contrary to Target's contention, the commission did not shift the burden to Target to disprove a violation. Rather, the commission simply chose to believe Morales' statement that the appropriate grinding/cutting masks were not available on the date he sustained his injury and disbelieve Target's evidence that appropriate masks were available to Morales on that date. The commission is the "exclusive evaluator of weight and credibility." *State ex rel. LTV Steel Co. v. Indus. Comm.*, 88 Ohio St.3d 284, 287 (2000); *State ex rel. Athey v. Indus. Comm.*, 89 Ohio St.3d 473, 475 (2000). For an appellate court "[t]o * * * assess the credibility of the evidence would place the court 'in the role of a "super commission," a role never envisioned by either the Ohio Constitution or the General Assembly.' " *State ex rel. Consolidation Coal Co. v. Indus. Comm*, 78 Ohio St.3d 176, 177 (1997), quoting *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18, 20 (1987).

{¶ 11}   For the foregoing reasons, Target's second and fourth objections are overruled.

{¶ 12}   In Target's third objection, Target argues that the commission erroneously determined that a violation of Ohio Adm.Code 4123:1-5-17 may be predicated on the employer's failure to correct an employee when the employee is found to be improperly using protective equipment. More particularly, Target finds fault with the following alternative finding by the commission's staff hearing officer ("SHO"):

> The Hearing Officer does not find the testimony presented by the Employer persuasive that they never saw the Injured Worker improperly using the protective equipment, and if they did, they corrected him and provided him with the proper protection equipment.

(Feb. 9, 2018 SHO Order at 6.)

{¶ 13} Target argues that, unlike Ohio Adm.Code 4123:1-5-12(C)(1), which places the burden on the employer to "verbally and through demonstration instruct the employee in the safe operation and maintenance of abrasive grinding and cutting and polishing equipment," Ohio Adm.Code 4123:1-5-17(D)(1) states: "It shall be the responsibility of the employee to use the eye protection provided by the employer."  Target claims that the commission's order placed a burden on Target that is not justified in the language of Ohio Adm.Code 4123:1-5-17(D)(1).

{¶ 14} Our review of Target's merit brief and reply brief in this case reveals Target did not make this particular argument in proceedings before the magistrate.  Consequently, the argument has been waived.  *State ex rel. Maglis v. Indus. Comm.*, 10th Dist. No. 15AP-648, 2016-Ohio-4644, ¶ 10, citing *State ex rel. German v. Provider Servs. Holdings, LLC*, 10th Dist. No. 13AP-149, 2014-Ohio-3336, ¶ 18.  Moreover, even if we were to agree with Target on this issue, it is of no consequence to the outcome of the case given our conclusion that the evidence supports the commission's determination that the proper safety masks were not made available to Morales on the date of the industrial accident.  Accordingly, Target's third objection is overruled.

{¶ 15} After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of Target's objections, we overrule the objections, and find that the magistrate made no error of fact or law.  We adopt the magistrate's decision as our own, including the findings of fact and conclusions of law therein, as supplemented by our own conclusions of law discussed in this decision.  In accordance with the magistrate's decision, we deny the writ of mandamus.

*Objections overruled*;
*writ of mandamus denied.*

BRUNNER and BEATTY BLUNT, JJ., concur.

_____

# A P P E N D I X

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Target Auto Repair<br>Minutemen Select, Inc., | : | |
| | : | |
| Relator, | | |
| | : | |
| v. | | No. 18AP-716 |
| | : | |
| Josue S. Morales et al., | | (REGULAR CALENDAR) |
| | : | |
| Respondents. | | |
| | : | |

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on May 14, 2019

*Lewis Brisbois Bisgaard & Smith,* and *John R. Christie,* for relator.

*Dave Yost,* Attorney General, and *Eric J. Tarbox,* for respondent Industrial Commission of Ohio.

## IN MANDAMUS

{¶ 16} Relator, Target Auto Repair Minutemen Select, Inc. ("Target"), has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted an award of compensation for the violation of a specific safety requirement ("VSSR") to Josue S. Morales, and ordering the commission to deny the award.

Findings of Fact:

{¶ 17} 1. Morales sustained a work-related injury on February 27, 2014, and his workers' compensation claim was allowed for the following conditions:

Left eye contusion; left eyelid laceration; facial laceration; macular hole left eye; forehead laceration; total loss of vision left eye.

{¶ 18} 2. Morales' injury occurred when a grinding disk shattered, broke the face shield he was wearing, and injured his face and left eye.

{¶ 19} 3. On October 9, 2015, Morales filed an application for an additional award for VSSR citing various provisions of the Ohio Administrative Code.

{¶ 20} 4. The Ohio Bureau of Workers' Compensation's ("BWC") safety violations investigation unit conducted an investigation. The investigators took a statement from Morales which included the following:

[Three] I was a fully trained employee at the time of my injury. I was also provided on the job training on how to operate the grinder involved in my injury.

[Four] At the time of my injury I was only required to wear a welding mask. The welding mask that I was wearing was defective. The plastic on the face of the mask was held together by tape because the original plastic that came with the mask broke and was thicker. The company did not want to buy a new welding mask and that is why I was required to wear this defective welding mask that was held together by tape. There was at least one other welding mask as well but that mask was in worse condition than the mask involved in my injury. I was not required to wear or provided any other type of personal protective equipment.

[Five] On the day of my injury I began my work shift at 9:00 a.m. and my injury occurred at about 11:00 a.m. I was using the grinder to cut the right quarter panel underneath the car. As I was doing this the blade broke off the grinder and went directly through my modified welding mask and a piece of the blade cut open my left eye.

[Six] The grinder involved in the injury originally came with a safety guard; however, the company was buying blades that were not the correct size and the safety guard would not fit. The grinder was not equipped with the safety guard at the time of my injury.

[Seven] The welding mask was originally equipped with a thick piece of plastic and it had a light inside in order to see what I was welding through the mask. When the original plastic broke and was replaced with a flimsy piece of plastic

kept together by tape, the light on the mask was also removed because it did not work without the original frame and plastic.

[Eight] There were many problems with the grinder prior to my injury. I would tell them they were buying the wrong blades and they refused to buy the correct ones because they preferred to buy the cheaper ones in bulk. One or two blades would break every time the grinder was used. The other employees also complained about the blades on the grinder.

[Nine] The owner Don Pack [sic] would work with us as well and use the same grinder. On one occasion the blade broke on him as well and cut his leg.

{¶ 21} 5. A statement was also taken from Donald Pak, an owner of Target. His statement provides in relevant part:

[Three] When I hired Josue I trained him on how to use the tools correctly because it could be dangerous if used incorrectly. Josue was hired with experience, but the way he used the tools in Puerto Rico was not always correct. So I had to ensure he knew the right away to use the tools for his own safety.

[Four] I always made it a point to enforce safety practices; such as wearing the proper equipment while performing your job. I have caught Josue working without a mask or even the proper mask and I always made it a point to tell him he needed to wear it. Target Auto Body always has the proper equipment available to the workers. The personal protective equipment supplied by Target Auto Body is grinding/cutting masks, sandblasting masks and face shields.

[Five] On the day of Joshua's [sic] injury there were multiple grinding/cutting masks available to be used. On 2/7/2014 which was prior to Josue's injury, there were two new masks purchased for cutting and grinding. On the day of his injury I was in the office but I was not near Josue. I heard Joshua [sic] was wearing a sandblasting mask, which was the wrong mask to wear while he was using the cutting wheel. He should have been wearing a cutting mask.

[Six] The blades that we use with the cutting wheel are the proper size blades; the workers put the blades on the cutting wheels themselves. If you use the cutting wheel on the wrong speed it will not function properly and can cause the blade to heat up and explode.

[Seven] This cutting wheel involved in Josue's injury originally came with a safety shield/guard but it was removed for easier maneuvering.

[Eight] The grinder/cutting wheel involved in Joshua's [sic] injury is still in working condition. It has never been taken out of service and we use it daily.

{¶ 22} 6. A statement was also taken from one of Morales' co-workers, David M. Rockow. That statement provides in relevant part:

[Three] The owner Jordan Kaminsky makes it a point to enforce safety practices on a daily basis. We are supposed to wear all the proper equipment to perform our job duties. If there is anything new that is needed Jordan makes sure that we have it. We always had available the following items: grinding/cutting masks, sandblasting masks, face shields, safety goggles and safety work gloves.

[Four] On the day of Joshua's [sic] injury there were two grinding/cutting masks available to be used. They were newly purchased and in proper condition. On the day of his injury Joshua [sic] was wearing a sandblasting mask/hood which was the wrong mask to wear while he was using the cutting wheel (grinder). I came in after Joshua's [sic] injury occurred and I was told he had suffered an injury to his eye because the cutting wheel exploded.

[Five] I used to see Joshua [sic] work with the grinder/cutting wheel without wearing any type of masks. I was even close to him one day when he was under a car using the cutting wheel and the blade broke. He was not wearing a mask and I was surprised he did not get hurt at that time.

[Six] The blades that we use with the grinder/cutting wheel are the proper blades and they are a perfect fit. If you use the tool properly and not press it too hard it will work just fine.

[Seven] The grinder/cutting wheel involved in Joshua's [sic] injury is also referred to as an open-end free cutting wheel. This means it is used without the safety shield/guard for easier access to damaged areas. You need to always wear your grinder/cutting mask. This tool did originally come with a safety shield/guard but it was removed.

> [Eight] The grinder/cutting wheel involved in Joshua's [sic] injury is still in working condition. It has never been taken out of service and we use it daily.

{¶ 23} 7. Morales' application was heard before a staff hearing officer ("SHO") on July 26, 2016 and was denied. The SHO first discussed Ohio Adm.Code 4123:1-5-07(C) and (E), which applied to hand-held portable power tools. Subsection (C) requires that, whether furnished by the employee or the employer, hand-held portable power tools must be maintained in a safe condition, free of worn or defective parts. Subsection (E) applies to power grinders and discusses the manner in which safety guards are to be used to protect the worker.

{¶ 24} In finding that Morales did not meet his burden of proof, the SHO made the following relevant findings: the grinder had never been taken out of service and was still in use; because there was no model number, serial number, or other information available regarding the grinder at issue, it could not be determined which specific blade or cutting wheel was to be used with the grinder; Morales was fully trained in the use of the grinder; it was not uncommon for a blade to break; and Morales was incorrectly using the grinder underneath a vehicle when the blade broke, and the presence of a guard would not have prevented his injury. As such, the SHO found there was insufficient evidence to substantiate the alleged violation of Ohio Adm.Code 4123:1-5-07(C) and (E).

{¶ 25} The SHO then addressed the applicability of Ohio Adm.Code 4123:1-5-12 et seq, which describes the requirements for grinding and cutting tools. Finding there was no documentation to identify the model number, serial number, or other information regarding the grinder, the evidence was insufficient to substantiate the alleged violation.

{¶ 26} The SHO then addressed the applicability of Ohio Adm.Code 4123:1-5-17, which covers personal protective equipment including the types of eye protection and face shields which are to be used when employees are performing various tasks. The SHO made the following relevant findings: it was undisputed that Morales was not wearing the correct mask when he was injured; Target acknowledged that a grinding mask had recently been repaired with a thinner plastic visor; grinding masks with the hard clear plastic visor were available at the time of Morales' injury but he chose not to wear one; and Morales was fully trained but failed to wear the available protective gear on a frequent basis. The SHO concluded Target had demonstrated that the appropriate personal protective equipment

was available, that Morales was fully trained and given prior direction on the use of the grinder as well as protective gear, and there was no duty of constant surveillance by Target to ensure that employees were using the provided safety equipment. Based on the above, the SHO concluded that Morales failed to demonstrate the existence of a VSSR.

{¶ 27} 8. Morales filed a request for rehearing asserting two separate grounds: (1) it was improper for the SHO to conclude that Morales was improperly using the grinder in a manner in which the presence of a guard would not have prevented an injury, and (2) evidence established that the grinder had originally come with a guard which the employer was aware had been removed.

{¶ 28} 9. The matter was reheard before a second SHO on July 10, 2017.[2] Upon rehearing, the second SHO granted the VSSR application. The SHO noted that it was undisputed that Morales sustained an injury in the course and scope of his employment when the wheel of the grinder he was operating without a safety guard broke loose, penetrated the face guard, and lacerated Morales' left eye. The SHO first discussed Ohio Adm.Code 4123:1-5-07(C) and (E), which pertain to hand tools such as the grinder at issue. The SHO order provides:

> First, the Injured Worker alleges a safety violation under 4123:1-5-07(C) and (E) Hand tools, hand-held portable powered tools, other hand-held equipment and portable safety containers. Which provides:
>
> "(C) General equipment.
>
> All hand tools and hand-held portable powered tools and other hand-held equipment whether furnished by the employee or employer shall be maintained in a safe condition, free of worn or defective parts.
>
> (E) Power grinders.
>
> Safety guards used on right angle head or vertical portable grinders shall have a maximum exposure angle of one hundred eighty degrees, and be located [so] as to be between the operator and wheel during use. The top half of the wheel shall be enclosed at all times."

---

[2] Following the initial order, two corrected orders were subsequently issued. The first corrected some clerical errors and omitted language concerning a right to a rehearing. The second correctly identified relator, Target Auto Repair Minutemen Select, Inc., as the on-site employer of Morales.

On the date of injury, the Injured Worker was working with a hand-held pneumatic power grinder/cutting wheel. Through the testimony, it was established that the grinder the Injured Worker was using on the date of injury was not that of the Injured Worker's but of the shop or owned by the supervisor, Don Pak. The grinder was placed in service for at least the five years of the Injured Worker's employment and available for use. The Injured Worker alleges that he did not supply his own grinder, but would use the grinders provided at the work place. Further, the grinding wheels purchased and supplied by the Employer were not always the correct size, since the oversized wheels were cheaper, and their large size prevented the use of a guard over the grinding wheel in violation of Ohio Admin. Code 4123:1-5-07. Further, the Injured Worker asserts that since the blade was too large for the particular grinder, it was the cause of the blade to break loose, or explode from the grinder and cause the injury. The testimony describes the act of when a blade breaks up from a grinder as more of an exploding action versus a crumbling action.

The parties did agree that the grinder in question had a removable guard which was not in place at the time of the injury. The guard was on the grinder when originally purchased, but removed by Don Pak immediately after purchase. Further, it is not disputed that it is not uncommon for a blade to break while using the power grinder for cutting steel. There is no dispute that the Injured Worker was fully trained on the proper use of the grinder, but employees routinely do not use the guards as the guard inhibits the use of the grinder while performing body work. The Employer asserts that the Injured Worker's improper use of the grinder and the use of the incorrect size of blade is what caused the blade to break and come loose from the grinder, hitting the Injured Worker in the face.

The Employer, Mr. Kaminoky, asserts that his business provides the building and heavy equipment, such as the lifts for cars, but does not provide the small hand tools necessary to work on cars. Employees are to provide their own hand tools, but he supplies blades and face masks for the shop. He testified that the correct size cutting wheels are always available for use and that the employees are responsible for choosing and placing the correct size blade on the type of grinder in use. The Employer asserts that the Injured Worker chose the incorrect size blade. Further, if at any time, there is a lack of supplies, the supervisor is notified and there is an open account to purchase supplies from their vendor. In fact,

any employee can go directly to the vendor and obtain supplies at no cost.

The Hearing Officer finds sufficient evidence to substantiate the alleged violation under Ohio Admin. Code 4123:1-5-07(C) and (E). The Employer may not supply the hand tools used by the employees to work on cars or have control of the small hand tools each employee chooses to use as their personal preference to work on cars. However, whether or not the hand held power tool is supplied by the employer or employee, it "shall be maintained in a safe condition." There is no evidence that the Employer ensured that its employees used equipment in accordance with the safety regulation. There is no proof that the Injured Worker was disciplined or reprimanded for his lack of use to use a safety guard while grinding or that he was reprimanded or disciplined if he failed to use the correct grinding wheel on the grinder.

{¶ 29} Thereafter, the SHO discussed the applicability of Ohio Adm.Code 4123:1-5-12 et seq and found that, based on the same factual findings made with regard to Ohio Adm.Code 4123:1-5-07(C) and (E), there was a lack of proof that Morales was disciplined or reprimanded for his lack of the use of a safety guard or if he failed to use the correct grinding wheel on the grinder.  Specifically, the SHO order provides:

Ohio Admin. Code 4123:1-5-12 (et seq) Abrasive grinding and cutting, polishing and wire buffing equipment is incorporated herein as if fully rewritten as contained within the electronic claim file and imaged on 09/30/2016 due to the length of the regulation and diagrams. Under 4123:1-5-12(C)(1), "the employer shall verbally and through demonstration instruct the employee in the safe operation and maintenance of abrasive grinding and cutting and polishing equipment."

Further, (D) (1) (a) machine guarding. "Abrasive wheels shall be used only on machines provided with safety guards." Some exceptions do apply, but the Hearing Officer finds that none of the exceptions apply in this case.

The Hearing Officer finds that given the detailed requirements for grinding and cutting tools, and the findings above, there is sufficient evidence to establish a violation.

{¶ 30} Thereafter, the SHO discussed the applicability of Ohio Adm.Code 4123:1-5-17, personal protective equipment.  The SHO order provides, in relevant part:

(C) Specific requirements of general application.

(1) Personal protective equipment furnished by the employer shall be issued to the employee in sanitary and proper condition so that it will effectively protect against the hazard involved.

(2) Where employees provide their own protective equipment, such equipment shall give equal or greater protection than that furnished by the employer.

(D) Eye and face protection.

(1) Responsibility.

The employer shall provide eye protection for all employees engaged in the operations listed in paragraph (D)(2) of this rule and exposed to an eye hazard. Eye protection shall also be provided for any other employees in the immediate area and who are exposed to the hazards of the operations listed. It shall be the responsibility of the employee to use the eye protection provided by the employer (see appendix to this rule for eye and face protector selection guide).

(2) Operations requiring eye protection.

(a) Eye protection shall be provided to employees performing the following operations:

(i) When using hand tools or mechanical equipment to cut, chip, drill, clean, buff, grind, polish, shape, or surface masonry, brick, concrete, plaster, stone, plastics, or other hardened substances. This also covers demolition work where the material listed are part of the operation;

* * *

(ix) Metal and plastic chipping, cutting, cleaning, grinding, conditioning, or machining where there is danger of flying particles;

* * *

(3) Face shields.

(a) Face shields may be provided in lieu of other forms of eye protection if they provide the required protection against the particular hazards for which they are designed.

* * *

(4) Material requirements for eye protection shall meet ANSI Z87.1 - 1968.

(G) Head and hair protection.

(1) Responsibility.

(a) Employer.

(i) Whenever employees are required to be present where the potential hazards to their head exists from falling or flying objects, or from physical contact with rigid objects, or from exposures where there is a risk of injury from electric shock, employers shall provide employees with suitable protective headgear.

Where required, head protection shall meet the requirements of ANSI Z89.1 - 1969.

(ii) When head protection is required employers shall provide accessories designed for use with the headgear.

(iii) Damaged parts of protective headgear shall be replaced. Protective helmets and bump caps or parts thereof and hair enclosures shall be sanitized before reissue.

The Injured Worker asserts that he was not provided with the required protective gear, specifically a proper face mask for the grinding aspects of the job he was performing at the time of the injury. The Hearing Officer finds this in violation with the above cited safety regulation.

It is undisputed that the mask the Injured Worker was wearing at the time of the accident was not the correct mask to use when grinding, but was the mask made for use while sandblasting. The mask for sandblasting was an altered grinding mask modified with a thinner plastic and taped together. The Injured Worker asserts that the sand blasting mask was the only mask available at that time of the injury and that the Employer did not have the more durable mask which contains a plastic shield which would have prevented the injury.

The Employer submitted evidence that the appropriate personal protective equipment was ordered on February 7,

2014 before the date of injury in this claim. However, the Hearing Officer finds insufficient evidence that proper masks were actually available to employees for use at the time of the injury. The Hearing Officer notes that in the Bureau of Workers' Compensation Safety Violation Investigative Report, appropriate grinding masks were ordered, but there is a lack of evidence of receipt of those masks and that they were available to employees for use at the time of the Injured Worker's injury.

A violation of a specific safety requirement is an employer penalty and must be strictly construed in favor of the employer when determining whether a specific code section has been violated. State ex rel. Burton vs. Indus. Comm., 46 Ohio St.3d 170, 545 N.E. 2d 1216 (1989). Further, should a violation be found, the violation or non-compliance must be the cause of the injury.

In this case, the Hearing Officer finds that the Injured Worker has established sufficient evidence that a violation of the above cited code sections and/or the Employer's non-compliance caused the injury sustained in this claim.

The Hearing Officer finds that the Employer has an obligation to maintain the equipment in a safe condition. Further, the "employer shall verbally and through demonstration instruct the employee in the safe operation and maintenance" of the equipment.

The Hearing Officer does not find the testimony presented by the Employer persuasive that they never saw the Injured Worker improperly using the protective equipment, and if they did, they corrected him and provided him with the proper protection equipment.

Therefore, the Hearing Officer finds that there is sufficient evidence to establish that the Employer violated Ohio Admin. Code 4123:1-5-07(C), (E); Ohio Admin. Code 4123:1-5-12, et seq./ and/or Ohio Admin. Code 4123:1-5-17(C)(1), (D)(1)-(4), (G)(1)[(a)](i)-(iii). Thus, the IC-8 Application filed on 10/09/2015 is granted.

It is the order of the Staff Hearing Officer that the on-site/customer Employer, Target Auto Body, is granted a period of 30 days from the mailing of this order to correct the violations found here.

{¶ 31} 10. Target's request for reconsideration was denied by order of the commission mailed March 28, 2018.

{¶ 32} 11. Thereafter, Target filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 33} For the reasons that follow, it is this magistrate's decision that Target has not demonstrated that the commission abused its discretion when it determined that Morales had met his burden of proving the VSSR as asserted.

{¶ 34} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 35} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 36} In order to establish a VSSR claim, the claimant must prove that: (1) an applicable and specific safety requirement was in effect at the time of the injury, (2) the employer failed to comply with the requirement, and (3) the failure to comply was the proximate cause of claimant's injuries. *State ex rel. Scott v. Indus. Comm.,* 136 Ohio St.3d 92, 2013-Ohio-2445. Factual questions concerning proof rest exclusively within the discretion of the commission and the interpretation of specific safety requirements is within the final jurisdiction of the commission. *Id.*

{¶ 37} It is well settled that a VSSR award is deemed a penalty to the employer subject to the rules of strict construction with all reasonable doubts concerning the applicability of the safety requirement construed in favor of the employer. *State ex rel. Sunesis Constr. v. Indus. Comm.,* 10th Dist. No. 09AP-423, 2010-Ohio-4434. However, in mandamus, the factual determinations of the commission in a VSSR claim are reviewed by the court only for an abuse of discretion. *Id.*

{¶ 38} In reviewing Target's brief, Target focuses on the differences in the factual findings made by the first SHO and the factual findings made by the second SHO. Target focuses on the evidence that Morales was fully trained in the manner in which to utilize the equipment and that he chose to use a mask that was inappropriate.

{¶ 39} As noted in the findings of fact, the evidence was conflicting. However, despite this, it is clear the first SHO determined that Morales was responsible for causing his own injuries. As Morales argued in his motion for rehearing, Ohio's workers' compensation system is a no fault system and, more specifically, in VSSR proceedings, the injured worker's negligence is only a defense where the employer has first complied with relevant safety requirements. *State ex rel. Internatl. Truck & Engine Corp. v. Indus. Comm.*, 10th Dist. No. 07AP-547, 2008-Ohio-2953. To that extent, there is evidence in the record on which the second SHO relied that the power grinder was originally equipped with a guard. At some point in time, that guard was removed and Target knew that it was removed. As such, Target was not in compliance with the specific safety requirements at the time that Target alleges Morales improperly used the grinder at issue. Further, the second SHO found that Target provided evidence that new grinding masks had been ordered but no evidence those masks had been received and made available to employees. Failure to provide appropriate grinding masks constitutes a VSSR. Again, the SHO found Target was likewise in compliance with this safety requirement as well.

{¶ 40} Credibility and the weight to be given evidence clearly are within the discretion of the commission as the fact finder. *Teece.* Furthermore, it is immaterial whether other evidence, even if greater in quantity and/or quality supports a conclusion which is contrary to the commission's. *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373 (1996).

{¶ 41} As stated at the outset, Target's mandamus case is based exclusively on the interpretation of the facts. There was conflicting evidence in the record; however, the

second SHO specifically identified the evidence relied on, and provided a brief explanation for the findings. Inasmuch as it cannot be said that the SHO misapplied the law in this case, Target cannot demonstrate that the commission abused its discretion when it determined that Morales did present sufficient evidence to satisfy a finding of a VSSR.

{¶ 42} Based on the foregoing, it is this magistrate's decision that this court should deny Target's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).